# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

| | |
|---|---|
| BRENDA KAY LEAVY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 19-cv-2705-JTF-tmp |
| | ) |
| FEDEX CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

_____

## REPORT AND RECOMMENDATION

_____

Before the court is a motion for summary judgment filed by plaintiff Brenda Kay Leavy on July 6, 2020.[1] (ECF No. 26.) Defendant FedEx Corporation ("FedEx") filed a response on August 17, 2020. (ECF No. 35.) FedEx filed a cross-motion for summary judgment on July 25, 2020. (ECF No. 31.) Leavy filed a response on August 19, 2020.[2] (ECF No. 36.) FedEx filed a reply on September 2, 2020. (ECF No. 43.) Leavy filed a sur-reply on September 4, 2020. (ECF No. 44.) For the reasons below, the undersigned recommends that Leavy's

_____

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2]On August 19, 2020, Leavy also separately filed a response to the statement of material facts (ECF No. 37) and an additional statement of facts (ECF No. 38), as well as numerous exhibits. (ECF No. 39.) Leavy filed an additional response on August 25, 2020. (ECF No. 40.)

motion for summary judgment be denied and FedEx's motion for summary judgment be granted.

## I.    PROPOSED FINDINGS OF FACT

The parties provide widely diverging accounts concerning the incidents that led to Leavy filing a *pro se* employment discrimination complaint against FedEx on October 16, 2019. (ECF No. 1.) However, Leavy did not provide "a separate, concise statement of the material facts," as required by Local Rule 56.1(a), when submitting her motion for summary judgment. In addition, when responding to FedEx's statement of facts, Leavy disputed several of FedEx's assertions without providing citations to the record or adequate explanations of her objections. (ECF Nos. 37 & 40.) Local Rule 56 requires that a party opposing a motion for summary judgment "must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." LR 56.1(b). Furthermore, "[e]ach disputed fact must be supported by specific citation to the record." Id. Similarly, Rule 56 of the Federal Rules of Civil Procedure requires that a party support or challenge factual assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court need not consider materials in the record not cited by the parties. Fed. R. Civ. P. 56(c)(3). When a party fails to properly challenge an opposing party's assertion of fact, Rule 56(e)(2) permits the court to "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court need not consider any unsupported factual assertions. See id.; see also Gunn v. Senior Servs. of N. Ky., 632 F. App'x 839, 847 (6th Cir. 2015) ("'[C]onclusory and unsupported allegations, rooted in speculation,' are insufficient to create a genuine dispute of material fact for trial.") (quoting Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir. 2003)). Accordingly, the following facts are deemed undisputed for the purpose of resolving the motions for summary judgment.

Leavy began working for FedEx on March 13, 1992. (ECF No. 31-3, at 8-9, 74.) On June 2, 2004, Leavy accepted a position as an Executive Administrative Assistant in the Human Resources ("HR") Department for Vice Presidents and Staff Vice Presidents at FedEx. (Id. at 10-12, 17-18, 75.) Between June 2004 and November 2018, Leavy worked for six different Staff Vice Presidents at FedEx. (Id. at 12-13.) Leavy began working as the Executive Administrative

Assistant for Karen S. Galambos on October 1, 2016. (Id. at 20; Galambos Decl. ¶ 3). While working for Galambos, Leavy's job duties included answering the phone, taking messages, copying documents, handling mail, arranging business meetings, assisting in managing Galambos's email inbox, making travel arrangements, and handling expense reports. (ECF No. 31-3, at 18-20, 77; Galambos Decl. ¶ 4.)

In February 2018, Leavy informed Galambos that she had been diagnosed with breast cancer. (ECF No. 31-3, at 23; Galambos Decl. ¶ 5.) Galambos assured Leavy that the HR department supported her and that she could take the time off of work needed in order to have surgery. (ECF No. 31-3, at 23-24; Galambos Decl. ¶ 5.) In February 2018, Leavy had no discussions with Galambos about taking medical leave. (ECF No. 31-3, at 24.) Leavy decided to take time off to have surgery and utilized her employee sick time without requesting any additional time off. (Id. at 24-25.) Nobody at FedEx made any disparaging comments or told Leavy she had to return to work the Monday following her surgery. (Id. at 25-26.) On March 16, 2018, Leavy requested intermittent leave under the Family and Medical Leave Act ("FMLA") so that she could obtain breast cancer treatment, including radiation treatments. (Id. at 26-27, 28-29, 87.)

As part of her FMLA paperwork, Leavy received a notice of non-discrimination and a copy of the Employee Rights and Responsibilities under the FMLA. (Id. at 29-30, 87-99.) Leavy's

request for intermittent FMLA leave was approved, and she received written notice confirming her FMLA leave from March 16, 2018 to June 13, 2018. (Id. at 31-32, 100.) Nobody at FedEx told Leavy she could not take intermittent FMLA leave. (Id. at 32.) Leavy knew if she needed additional time off, she needed to tell Aetna, the third-party managing her FMLA leave, or advise FedEx. (Id. at 27, 32.) Leavy never discussed any accommodation other than her intermittent FMLA leave with Galambos or anyone else at FedEx. (Id. at 33-34.) In a letter dated June 19, 2018, Leavy received notice that her intermittent FMLA leave was closed following the end of her radiation treatments. (Id. at 42, 102.)

According to Leavy's medical records, her radiation treatments ended on April 30, 2018, and she began taking daily medication for endocrine therapy to control estrogen levels on May 3, 2018. (ECF No. 32, at 3-7.) After completing her radiation therapy, Leavy attended a follow-up appointment on June 1, 2018, and her medical records from that appointment show under the "Assessment and Plan" section that there was "no evidence of recurrence [of her cancer] at [that] time." (Id. at 8.) Leavy attended another follow-up appointment on October 4, 2018, and her medical records from that appointment show under the "Assessment" section that there was "no evidence of disease." (Id. at 9-12.)

Galambos completed a review of Leavy's work performance for fiscal year 2018, which provided as follows:

> [Leavy] has had a tough year but has kept the office running and kept a positive attitude. I appreciate the care she puts into travel plans, which run smoothly. An opportunity for [Leavy] is to be accountable for predicting needs/questions and having answers readily available on her own. [Leavy] is happy to pursue something when provided specific direction but I'm not always available to provide it. I look forward to a productive [fiscal year 2019].

(ECF No. 31-3, at 85.)

During Leavy's employment as Galambos's Executive Administrative Assistant, Galambos had to become more involved in managing her own meetings, work schedule, and daily office tasks because of several mistakes made by Leavy.[3] (Galambos Decl. ¶ 6.) Leavy incorrectly scheduled a large meeting with corporate level participants for one hour instead of two hours despite being given written instructions via email, resulting in the meeting having to be rescheduled with several different FedEx corporate offices. (Galambos Decl. ¶ 6; ECF No. 31-4, at 5.) Leavy put on Galambos's calendar a meeting with "IT All Management" for March 26, 2018, but the meeting was actually supposed to be scheduled for April 26, 2018. (Galambos Decl. ¶ 6; ECF No. 31-4, at 6.) Leavy was

---

[3]Leavy responds to the statements of fact regarding her mistakes at work by asserting for the first time in her reply that she suffered from a "mental impairment that was triggered after the physical impairment and discrimination." (ECF No. 40, at 11.) She does not, however, dispute the fact that these errors occurred. Moreover, it is improper to bring such allegations for the first time in a reply brief, and Leavy provides no evidence to support her assertion. Accordingly, the court will disregard Leavy's allegation.

notified on April 20, 2018, two months before a June 22, 2018 meeting, that the June meeting had been canceled, yet she failed to let Galambos know, and Galambos, who had already begun preparing for the meeting, did not discover that the meeting had been canceled until she communicated with her superior on June 18, 2018. (Galambos Decl. ¶ 6; ECF No. 31-4, at 7-11.) Galambos discovered that Leavy, rather than asking someone to cover her phone, would answer business phone calls while in the restroom. (Galambos Decl. ¶ 6.) Galambos's attempts to coach Leavy on proper handling of phone calls were met with resistance and no desire by Leavy to find an alternative solution. (Id.) Leavy did not follow Galambos's coaching on how to effectively and appropriately perform her job duties. (Id.) For example, Leavy would take a phone message and email Galambos the message without checking to see if she would like to take the call, even though their offices were located next to each other. (Id.) On one occasion, Don Colleran, FedEx's President and CEO, called Galambos's office on April 17, 2018, but Leavy did not tell Galambos about the call until April 30, 2018. (Id.; ECF No. 31-4, at 12.)

On the evening of July 24, 2018, Galambos noticed there were conflicting interview start times on her calendar for the following morning. The calendar said the interview was to start at 7:00 a.m., but the email attached to the calendared item provided a start time of 8:00 a.m. Galambos asked Leavy what the correct start time

was but Leavy responded that she did not know. Galambos then had to email Leavy back and ask her to please verify the correct start time, and Leavy responded that she would check but did not know if she would have a response before she went to bed. Consequently, Galambos had to contact the Executive Vice President of IT apologizing for the confusion and asked him to let her know the meeting's start time. (Galambos Decl. ¶ 7; ECF No. 31-4, at 13-16.) Galambos revoked Leavy's access to her email because Leavy's responses to emails and actions on emails Galambos received in her inbox were sporadic, not consistent, and caused confusion as to which emails had been responded to and acted upon. (Galambos Decl. ¶ 8.) Leavy would typically not let Galambos know her whereabouts, especially if Galambos was not in the office. (ECF No. 31-3, at 38.) Because Galambos began calendaring her own meetings, answering her own phone calls, making her own travel arrangements, and managing her email inbox without assistance, Galambos determined that the position of Executive Administrative Assistant reporting to her was redundant and unnecessary for her in conducting business. (Galambos Decl. ¶ 9.)

On October 4, 2018, Galambos notified Leavy of the determination that a dedicated Executive Assistant for the Staff Vice President of Human Resources was no longer needed and would be eliminated effective October 5, 2018. (ECF No. 31-3, at 103.) The Staffing Effectiveness letter stated that in accordance with

the FedEx Staffing Effectiveness policy, Leavy's compensation and benefits would remain unchanged until her "acceptance or refusal of another FedEx Services or affiliate company position; resignation; termination; or, 60 calendar days following th[e] notification of being staffing effected." (Id.) The letter further stated that "[a]s a staffing affected employee, you have responsibility for taking personal initiative in securing alternative positions. There are no restrictions on the number of internally posted positions for which you may submit applications." (Id.) In addition, the letter provided that "an employee notified as staffing affected may request a 90-day personal leave of absence without pay either upon refusing another FedEx company position or at the conclusion of 60-day period following the date of notification." (Id.) Lastly, the letter provided that "[i]f you are unsuccessful in obtaining another position at the conclusion of the 90-day personal leave period, you will be considered to have voluntarily resigned." (Id.) Galambos provided Leavy with a copy of this Staffing Effectiveness letter, which Leavy refused to sign, and the FedEx Staffing Effectiveness Policy. (Id. at 42-45; Galambos Decl. ¶ 14.)

Leavy knew how to access FedEx's policies and procedures, which are maintained online. (ECF No. 31-3, at 14.) Leavy acknowledged and agreed to receive and review materials related to her employment electronically, which included the policies and

procedures FedEx provided to its employees. (Id. at 14-16, 76.)
FedEx maintains an Equal Employment Opportunity Policy ("EEO
Policy") that prohibits discrimination on numerous bases,
including disabilities. (Galambos Decl. ¶ 20; ECF No. 31-4, at
21.) FedEx's EEO Policy further provides that if an employee feels
he or she has been discriminated against, the employee should
report it to a member of management, the HR department, or the
Alert Line. (Galambos Decl. ¶ 20; ECF No. 31-4, at 21.) As
described above, FedEx maintains a Staffing Effectiveness Policy
that provides an opportunity for all employees to retain their
employment by finding another job within FedEx following the
elimination or relocation of their position. (Leavy Dep. at 94:
12-17, 110:3-6; ECF No. 31-3, at 103.) FedEx also maintains a
Criminal Charges Policy that requires employees to report an
arrest, charge or indictment to their manager no later than the
next business day.[4] (Galambos Decl. ¶ 18; ECF No. 31-4, at 19.)
According to the FedEx Conduct Policy, an employee may be
terminated for misconduct, which includes without limitations,

---

[4]Leavy was convicted of driving while intoxicated in July of 2018.
(Galambos Decl. ¶ 18; ECF No. 31-3, at 3.) Leavy acknowledged this
conviction in her deposition testimony. (ECF No. 31-3, at 3.)
However, Leavy requests sanctions against FedEx for stating that
she was arrested. (ECF No. 38, at 1.) Leavy disputes that she was
ever arrested, as she was never sent to jail. (ECF No. 44, at 2.)
FedEx's alleged misstatement regarding the conviction does not
support a finding of sanctions.

violations of FedEx rules.[5] (Galambos Decl. ¶¶ 18, 19; ECF No. 31-4, 19-22.)

In accordance with FedEx policy, Leavy's compensation and associated benefits remained unchanged after the elimination of her position at FedEx. (ECF No. 31-3, at 48, 51; Galambos Decl. ¶ 13.) FedEx, in accordance with its policy, provided Leavy sixty days of paid leave from October 5, 2018 through December 5, 2018. (ECF No. 31-3, at 48, 51.) A representative from FedEx's HR department, Adrianne Vinson, attempted to help Leavy find open positions within FedEx. (Id. at 48, 51.) Vinson provided Leavy with information regarding jobs on a regular basis. (ECF No. 39-2, at 59.) Leavy told Vinson she was not interested in any position

---

[5]In reply, Leavy asserts that she had never before seen the policy sheets regarding the FedEx Criminal Charges Policy or Conduct Policy. (ECF No. 40, at 6.) Leavy asks the court to strike the documents from the record because FedEx did not provide them within the discovery period. (Id.) However, "[a] motion to strike is technically not available for motions for summary judgment and the attachments thereto." Wright v. Cellular Sales Mgmt., Grp., LLC, No. 3:17-CV-324-JRG-DCP, 2019 U.S. Dist. LEXIS 28478, 2019 WL 903846, at *2 (E.D. Tenn. Feb. 22, 2019) (quoting Loadman Grp., L.L.C. v. Banco Popular N. Am., No. 4:10CV1759LIO, 2013 U.S. Dist. LEXIS 40267, 2013 WL 1154528, at *1 (N.D. Ohio Mar. 19, 2013)); see also Adams v. Valega's Prof. Home Cleaning, Inc., No. 1:12CV0644, 2012 U.S. Dist. LEXIS 157550, 2012 WL 5386028, at *2 (N.D. Ohio Nov. 2, 2012) ("A 'motion to strike' applies only to pleadings.") (citing Fed. R. Civ. P. 12(f)). Moreover, counsel for FedEx provided a sworn declaration attesting to FedEx's production of its Criminal Charges Policy and Conduct Policy. (ECF No. 43-2, at 2-3.) FedEx also provided email conversations with Leavy regarding its production of the documents. (ECF No. 43-2, at 7-12.) For the reasons above, Leavy's request to strike the documents is denied.

at FedEx other than executive assistant to a vice president. (Id. at 38-39.) Vinson sent Leavy a web link to access available FedEx job postings on the internet, but Leavy chose not to access it. (ECF No. 31-3, at 54-55.)

On November 30, 2018, with five days remaining of her 60-day paid leave (and an additional 90-day job search available), Leavy sent an email to Galambos and representatives of FedEx's legal and HR departments stating she was "retiring from FedEx, effective today, November 30, 2018." (ECF No. 31-4, at 17; ECF No. 31-3, at 59-63; Galambos Decl. ¶ 15.) Nobody at FedEx told Leavy to retire, and Leavy had not discussed her decision to retire with anyone at FedEx prior to sending the email described above. (ECF No. 31-3, at 60.) Leavy started receiving her FedEx retirement benefits on January 1, 2019, retroactive to the date of her retirement, and Leavy continues to have access to healthcare, her 401(k), her FedEx pension, Hired Legal Plan, and People Help. (Id. at 6-7, 66.) FedEx has not hired anyone to the position previously held by Leavy. (Id. at 52; ECF No. 43-3, at 2.) Leavy's former work area is now occupied by another employee, Susan Shettles, who provides no administrative support to Galambos. (Galambos Decl. ¶ 11.) An HR project manager, Tamara Turner, works outside of Galambos's office suite.[6] (ECF No. 43-3, Turner Decl. ¶ 5.) Turner does not perform

---

[6]Leavy objects to Tamara Turner's declaration, stating that "Leavy has faith in the Court to realize the undue influence exerted on

the duties of an executive administrative assistant for Galambos. (Id. at ¶ 6.) Turner does not handle Galambos's email or calendar, schedule her meetings, or arrange for her travel. (Id.)

The following facts are in dispute. According to Leavy, Galambos made a disparaging comment about her taking intermittent FMLA leave in April of 2018, during the course of her radiation therapy. (ECF No. 39-2, at 26-27.) According to Leavy's deposition testimony, Galambos told Leavy "we are already accommodating you. Just because you're on FMLA don't mean that you can put your work off on others." (Id.) Nobody else was present at the time. (Id.) Leavy additionally asserts that she decided not to renew her FMLA paperwork because "Galambos did not advise Leavy that the consequences of not renewing her FMLA leave paperwork would be the termination of her job." (ECF No. 40, at 10; see also ECF No. 39-2, at 56.) Leavy also asserts that her point of contact at FedEx, Adrianne Vinson, told her that Galambos had spoken with the corporate vice president of HR, Judy Edge, and the legal department at FedEx before eliminating Leavy's position. (ECF No. 39-2, at 58.) According to Leavy, Vinson said that Galambos, Edge, and the

---

Turner by her current employer, FedEx, in submitting this Declaration." (ECF No. 44, at 3.) Leavy has provided no evidence of any improper conduct by FedEx, and such conclusory allegations are insufficient to warrant disregarding Turner's declaration. See Gunn, 632 F. App'x at 847.

legal department were all involved in the decision to eliminate her position. (Id.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary

-14-

judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell, 351 F.3d at 247 (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016).

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 387 (6th Cir. 2016) (quoting Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 391 (quoting Taft Broadcasting Co., 929 F.2d at 248); see also McKim v. Newmarket Techs., Inc., 370 F. App'x 600, 603-04 (6th Cir. 2010).

**B.  Leavy's Motion for Summary Judgment**

    1.  Local Rules and Federal Rules of Civil Procedure

FedEx argues that Leavy's motion for summary judgment should be denied because Leavy has failed to comply with the applicable Local Rules and Federal Rules of Civil Procedure. The undersigned finds that Leavy has failed to provide a separate, concise statement of material facts as required by Local Rule 56.1. While Leavy provided several paragraphs as a "statement of facts" in her motion for summary judgment, she submitted almost no supporting evidence. Leavy attached two exhibits to her motion: her performance review for fiscal year 2018 by Galambos (ECF No. 26-1, at 2) and documents from FedEx regarding the elimination of her position (ECF No. 26-2, at 2-4). Leavy provided no declarations, affidavits, deposition transcripts, or any other documentation supporting her assertions.[7] The statement of facts in her motion for summary judgment included no citations to the record beyond general references to the two aforementioned exhibits.

Leavy's *pro se* status does not relieve her of the obligation to comply with the Local Rules and Federal Rules of Civil Procedure. See Morgan v. AMISUB (SFH), Inc., No. 18-cv-2042-TLP-tmp, 2020 U.S. Dist. LEXIS 162383, 2020 WL 5332946, at *3 n.5 (W.D. Tenn. Sept. 4, 2020) (collecting cases); see also Bass v. Wendy's of Downtown, Inc., 526 F. App'x 599, 601 (6th Cir. 2013) ("[N]on-

---

[7]While Leavy later filed exhibits with the court (ECF No. 39), she did not provide the separate concise statement of facts required by the Local Rules.

prisoner *pro se* litigants are treated no differently than litigants who choose representation by attorneys.") (citations omitted). *Pro se* non-prisoner litigants are not entitled to "special assistance." United States v. Ninety-Three (93) Firearms, 330 F.3d 414, 427-28 (6th Cir. 2003) (citing Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988)); see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000) ("[A] willfully unrepresented plaintiff volitionally assumes the risks and accepts the hazards which accompany self-representation.") (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). This includes at the summary judgment stage. See Viergutz v. Lucent Techs., 375 F. App'x 482, 485 (6th Cir. 2010) ("[Plaintiff]'s status as a *pro se* litigant does not alter his duty on a summary judgment motion."); see also McKinnie v. Roadway Express, Inc., 341 F.3d 554, 558 (6th Cir. 2003) ("Ordinary civil litigants proceeding *pro se*, however, are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

Leavy's failure to comply with the applicable Local Rules and Federal Rules of Civil Procedure is a basis for denying her motion for summary judgment. See, e.g., Jackson v. Star Transp., No. 3:09-0613, 2010 U.S. Dist. LEXIS 98581, 2010 WL 37248492010, at *1-2 (M.D. Tenn. Aug. 26, 2010), report and recommendation adopted, 2010 WL 3724847 (M.D. Tenn. Sept. 17, 2010). For the sake of

completeness, however, the undersigned will address the merits of her motion below.

### 2. Title VII Claim

Leavy seeks to assert a Title VII claim against FedEx for the first time in her motion for summary judgment. (ECF No. 26, at 9.) This claim was not pled in the complaint, and Leavy acknowledged in her deposition testimony that she was bringing only ADA and FMLA claims.[8] (ECF No. 31-3, at 4-5.) Leavy is not entitled to summary judgment on her claim purportedly brought under Title VII.

### 3. ADA Claim

Leavy alleges FedEx discriminated against her in violation of the ADA by terminating her employment. "An employee may prove discrimination based on disability in two ways. The first is by putting forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision." Burress v. City of Franklin, Tenn., 809 F. Supp. 2d 795, 810 (M.D. Tenn. 2011) (citing Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998)). The second is through the indirect burden-

---

[8]In filling out her complaint, Leavy used the standardized form for *pro se* litigants seeking to assert employment discrimination claims. (ECF No. 1.) In the section for basis of jurisdiction, Leavy checked only the boxes corresponding to the ADA and FMLA. (Id. at 3.) In the section pertaining to the discriminatory conduct alleged, Leavy checked boxes corresponding to termination of employment and retaliation. (Id. at 4.) Under the section for stating the basis of the alleged discrimination, Leavy checked only the box corresponding to disability. (Id.)

shifting approach articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802—03 (1973).

Because Leavy offers only indirect evidence to support her claims, the court applies the McDonnell Douglas burden-shifting framework. Schwendeman v. Marietta City Schs., No. 20-3251, 2020 U.S. App. LEXIS 39230, 2020 WL 77113272020, at *3 (6th Cir. Dec. 14, 2020). Under this approach, Leavy must first establish a *prima facie* case of discrimination by showing that: "(1) [s]he was disabled; (2) [s]he was otherwise qualified to perform h[er] job with or without reasonable accommodation; (3) [s]he suffered an adverse employment decision; (4) h[er] employer knew or had reason to know of h[er] disability; and (5) [s]he was replaced or the position remained open while his employer looked for other applicants." Id. (citing Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011)). "Under the McDonnell Douglas burden-shifting framework, once a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual." Whitfield, 639 F.3d at 259 (citations omitted).

Leavy cannot establish a *prima facie* case of disability discrimination under the ADA because she cannot satisfy the fifth prong – that FedEx replaced Leavy or left the position open while

looking for other applicants. When the adverse employment decision arises as a part of a work force reduction, the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Geiger v. Tower Auto., 579 F.3d 614, 623 (6th Cir. 2009) (quoting Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir. 1990)); see also Barlia v. MWI Veterinary Supply, Inc., 721 F. App'x 439, 444 (6th Cir. 2018). "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." Geiger, 579 F.3d at 623; see also Lockett v. Marsh USA, Inc., 354 F. App'x 984, 992 (6th Cir. 2009) ("Eliminating a single job is sufficient to constitute a legitimate reduction in force.") "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." Geiger, 579 F.3d at 623 (quoting Barnes, 896 F.2d at 1465). "A person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties.'" Id. (quoting Barnes, 896 F.2d at 1465). "A person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" Id. (quoting Barnes, 896 F.2d at 1465).

FedEx eliminated the Executive Administrative Assistant position under Galambos on October 5, 2018.[9] (ECF No. 31-3, at 103.) FedEx did not hire and has not hired anyone to the position previously held by Leavy. (ECF No. 31-3, at 52; Galambos Decl. ¶ 9; Turner Decl. ¶ 7.) Leavy argues that she was replaced by Tamara Turner, but Turner provides no administrative support to Galambos. (Galambos Decl. ¶ 10; Turner Decl. ¶ 6.) Thus, Turner did not replace Leavy. Leavy provides no evidence that FedEx has replaced her or left her position open while looking for other applicants. Because Leavy cannot meet the ordinary standard for the fifth element of a *prima facie* case of disability discrimination under the ADA, see Schwendeman, 2020 WL 77113272020, at *3, she ipso facto cannot meet the heightened standard applicable to workforce reduction cases, which requires "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for

---

[9]Leavy argues that FedEx should have placed her in another open position at the company after her position was eliminated, but "reducing a workforce is distinct from failing to transfer." Brown v. Kelsey-Hayes Co., 814 F. App'x 72, 81 n.9 (6th Cir. 2020). "'[A] true work force reduction case' is not defined by whether there are other jobs open at a company." Id. (quoting Barnes, 896 F.2d at 1465). "Rather, the correct inquiry is whether an employee's position was eliminated at the company." Id. (citing Barnes, 896 F.2d at 1465). "And '[t]his Circuit has clearly established that an employer has no duty . . . to permit an employee to transfer to another position . . . when the employee's position is eliminated as part of a work force reduction." Id. (quoting Barnes, 896 F.2d at 1469).

impermissible reasons," Geiger, 579 F.3d at 623.[10] Leavy's reply brief did not respond to the legal arguments presented by FedEx or point to any evidence as satisfying this additional burden, and as previously stated, Leavy cannot rely on unsupported allegations at the summary judgment stage. See Adebisi v. Univ. of Tennessee, 341 F. App'x 111, 113 (6th Cir. 2009) ("A plaintiff's 'conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.'") (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992)). Accordingly, Leavy has not established a *prima facie* case of discrimination.

Even if Leavy had established a *prima facie* case of disability discrimination under the ADA, FedEx offers legitimate reasons for eliminating her position. FedEx relies on the fact that Galambos had to absorb many of Leavy's administrative duties following several mistakes made by Leavy. (Galambos Decl. ¶ 6.) For example, Leavy incorrectly scheduled meetings at the wrong times and for wrong amounts of time. (Galambos Decl. ¶ 6; ECF No. 31-4, at 5-6.) Leavy would not always let Galambos know when meetings were

---

[10]Leavy does not attempt to establish that "she was treated less favorably than a similarly situated, non-protected employee." Day v. Krystal Co., 471 F. Supp. 2d 874, 884 (E.D. Tenn. 2007); see also Crane v. Monterey Mushroom, Inc., 910 F. Supp. 2d 1032, 1045 (E.D. Tenn. 2012) ("This additional showing can usually be met by demonstrating that a 'comparable non-protected person was treated better.'") (quoting Williams v. Emco Maier Corp., 212 F. Supp. 2d 780, 784 (S.D. Ohio 2002)).

canceled. (Galambos Decl. ¶ 6; ECF No. 31-4, at 7-11.) Leavy was not reliable when it came to answering phones and taking messages for Galambos. (Galambos Decl. ¶ 6.) Galambos also found that Leavy was sporadic and inconsistent in responding to and acting on emails. (<u>Id.</u> at ¶ 8.) Accordingly, Galambos began calendaring her own meetings, answering her own phone calls, making her own travel arrangements, and managing her email inbox without assistance. (<u>Id.</u> at ¶ 9.) As a result, Galambos decided the Executive Administrative Assistant position was redundant and eliminated it. (<u>Id.</u>)

Because FedEx has articulated a non-discriminatory explanation for eliminating Leavy's position, the burden shifts back to Leavy "to prove that the defendant's explanation is pretextual." <u>Whitfield</u>, 639 F.3d at 259. "A plaintiff can show pretext by showing that the defendant's proffered reason for termination has 'no basis in fact,' 'did not actually motivate the employer's action,' or was 'insufficient to motivate the employer's action.'" <u>Jennings v. Cnty. of Monroe</u>, 630 F. App'x 547, 551 (6th Cir. 2015) (quoting <u>Chen v. Dow Chem. Co.</u>, 580 F.3d 394, 400 (6th Cir. 2009)). As noted above, Leavy's reply brief did not respond to the legal arguments presented by FedEx. In responding to FedEx's statement of facts, however, Leavy attempts to argue that her mistakes at work resulted from a "mental impairment that was triggered after the physical impairment and

discrimination." (ECF No. 40, at 11.) Because Leavy provides no evidence to support these assertions (which, in any event, does not actually dispute the fact that these errors occurred), the court determined above that they should be disregarded. There is no evidence in the record linking Leavy's mistakes at work to her breast cancer. Leavy simply does not provide sufficient evidence to establish that FedEx's explanation for eliminating her position is pretextual. Accordingly, Leavy is not entitled to summary judgment on her disability discrimination claim.

4.   FMLA Claims

"The FMLA entitles qualifying employees up to 12 work weeks of leave under specified circumstances, including if they are suffering from a serious health condition." Tennial v. UPS, 840 F.3d 292, 307 (6th Cir. 2016) (citing 29 U.S.C. § 2612(a)(1)(D)). The Sixth Circuit "recognize[s] two theories of recovery under the FMLA: interference and retaliation." Id. (citing Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012)). "Although a plaintiff can proceed under both theories, the proof needed for each claim differs." Id. at 307-08 (citing Seeger, 681 F.3d at 282). "A plaintiff proceeding under a retaliation theory must show discriminatory or retaliatory intent, whereas a plaintiff alleging interference need not prove any unlawful intent on the part of his employer." Id. at 308 (citing Seeger, 681 F.3d

at 282). Leavy asserts that her FMLA rights were violated under both theories.

"To establish a claim for interference under the FMLA, a plaintiff must demonstrate that (1) [s]he is an eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of h[er] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [s]he was entitled." Id. (citing Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005)). The court need not analyze the first four factors because Leavy has not provided any evidence that she was denied FMLA benefits. See id. ("A benefit is denied if an 'employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave.'") (quoting Arban v. W. Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003)). Leavy was never denied FMLA leave. Rather, Leavy's request for intermittent FMLA leave was approved and she took her FMLA leave from March 16, 2018 to June 13, 2018. In addition, Leavy was not denied reinstatement to her position after taking her FMLA leave. On the contrary, Leavy continued to work while taking intermittent FMLA leave and after it closed in June 2018. Accordingly, Leavy is not entitled to summary judgment on her FMLA interference claim.

"To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) [s]he engaged in an activity protected

by the Act, (2) this exercise of h[er] protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." Id. (citing Arban, 345 F.3d at 404). "In order to establish such a causal connection, a plaintiff must show some type of retaliatory intent." Id. Leavy seemingly argues that the approximately four-month period between her return from FMLA leave and the elimination of her position demonstrates the necessary causal connection between the events. (ECF No. 26, at 9.) This temporal proximity, standing alone and under the facts of this case, is insufficient to establish causation. See Tuttle v. Metro. Gov't of Nashville, 474 F.3d 307, 321 (6th Cir. 2007); Cummins v. Promethean, Inc., 614 F. App'x 263, 266 (6th Cir. 2015); see also Bluegrass Dutch Trust Morehead, LLC v. Rowan Cty. Fiscal Court, 734 F. App'x 322, 329 (6th Cir. 2018) ("Substantial case law from our court cautions about the permissibility of drawing an inference of causation from temporal proximity alone, and temporal proximity alone is seldom sufficient to support the necessary causation.") (collecting cases). The only other evidence cited by Leavy is the annual performance review completed by Galambos. (ECF No. 31-3, at 85.) However, Leavy points to no evidence that Galambos improperly considered her FMLA leave when completing the annual performance review. Moreover, Leavy points to no specific language in the

performance review that sufficiently establishes a retaliatory intent. Accordingly, Leavy is not entitled to summary judgment on her FMLA retaliation claim.

## C. FedEx's Motion for Summary Judgment

FedEx argues that it is entitled to summary judgment on Leavy's claims under the ADA and FMLA.

### 1. ADA Claim

As discussed in the section above, Leavy alleges that FedEx discriminated against her in violation of the ADA by terminating her employment. Because Leavy offered only indirect evidence to support her claims, the court applies the <u>McDonnell Douglas</u> burden-shifting framework. <u>Schwendeman</u>, 2020 WL 77113272020, at *3. Under this approach, Leavy must first establish a *prima facie* case of discrimination by showing that: "(1) [s]he was disabled; (2) [s]he was otherwise qualified to perform h[er] job with or without reasonable accommodation; (3) [s]he suffered an adverse employment decision; (4) h[er] employer knew or had reason to know of h[er] disability; and (5) [s]he was replaced or the position remained open while his employer looked for other applicants." <u>Id.</u> (citing <u>Whitfield</u>, 639 F.3d at 258-59).

Even viewing all evidence in the light most favorable to Leavy, she cannot establish a *prima facie* case of discrimination under the ADA. The undisputed evidence in this case demonstrates that FedEx did not replace Leavy or leave her position open while

searching for other applicants. See Geiger, 579 F.3d at 623 ("A person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties.'") (quoting Barnes, 896 F.2d at 1465). Rather, Galambos absorbed Leavy's duties and the Executive Administrative Assistant position has been and remains eliminated. (ECF No. 31-3, at 52; Galambos Decl. ¶ 9; Turner Decl. ¶ 7.) While Leavy asserts that she was replaced by Tamara Turner, the undisputed evidence demonstrates that Turner provides no administrative support to Galambos. Accordingly, Turner did not replace Leavy. See Geiger, 579 F.3d at 623. Leavy also does not attempt to establish that "she was treated less favorably than a similarly situated, non-protected employee." Day, 471 F. Supp. 2d at 884.

As stated above, the heightened standard for adverse employment decisions arising as part of work force reductions requires Leavy to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." See Geiger, 579 F.3d at 623. In responding to FedEx's motion for summary judgment, Leavy relies on her allegations that Galambos once told her "we are already accommodating you. Just because you're on FMLA don't mean that you can put your work off on others." (ECF No. 36, at 8.) According to Leavy, this statement "clearly satisf[ies] the heightened . . . standard imposed by an employer's

-28-

assertion of a reduction in force, as it shows that Leavy was the recipient of comments improperly judging her performance based on her disability and her need to leave to address her serious medical condition." (Id.) However, even if Galambos in fact made the statement attributed to her, it would not be sufficient to create a genuine dispute of material fact and save Leavy's claim. The statement lacks relevance because it does not relate to the decision to eliminate Leavy's position. See Brown v. Kelsey-Hayes Co., 814 F. App'x 72, 83 (6th Cir. 2020) ("[S]tatements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden[.]") (quoting Geiger, 579 F.3d at 621). Accordingly, this single remark Leavy attributes to Galambos is insufficient as a matter of law to establish a discriminatory motive behind the decision to eliminate her position. See id.; see also Foster v. Michigan, 573 F. App'x 377, 393 (6th Cir. 2014); Hopkins v. Elec. Data Sys. Corp., 196 F.3d 655, 661 (6th Cir. 1999).

Even if Leavy could establish a *prima facie* case of discrimination, FedEx has carried its burden to articulate a legitimate non-discriminatory reason for its actions – that Galambos deemed the position redundant after having to absorb many of Leavy's administrative duties following several mistakes made by Leavy. Accordingly, the burden shifts to Leavy to establish that FedEx's proffered reason for eliminating her position is

pretextual. "To create a genuine dispute of fact regarding pretext at the summary judgment stage, [Leavy] was required to show '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action.'" Schwendeman, 2020 WL 77113272020, at *3 (quoting Romans v. Mich. Dep't of Human Servs., 668 F.3d 826, 839 (6th Cir. 2012); Chen, 580 F.3d at 402). To demonstrate pretext, Leavy asserts that "[i]f FedEx were eliminating positions due to 'staffing effectiveness' it is substantially more likely that the Human Resources department would eliminate Edge's part-time assistant's position[.]" (ECF No. 36, at 11.) This sort of speculative assertion is insufficient to establish pretext at the summary judgment stage. See Gunn, 632 F. App'x at 847; see also Foster, 573 F. App'x at 395 ("[A] plaintiff's subjective beliefs are 'wholly insufficient evidence to establish a claim of discrimination.'") (quoting Mitchell, 964 F.2d at 584). Accordingly, Leavy cannot demonstrate pretext, and FedEx is entitled to summary judgment on the ADA disability discrimination claim.

    2.  FMLA Claims

FedEx seeks summary judgment as to Leavy's FMLA interference and retaliation claims. "To establish a claim for interference under the FMLA, a plaintiff must demonstrate that (1) [s]he is an

eligible employee, (2) the defendant is an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of h[er] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [s]he was entitled." Tennial, 840 F.3d at 308 (citing Walton, 424 F.3d at 485). As explained above, the court need not analyze the first four factors because Leavy has not provided any evidence that she was denied FMLA benefits. See id. ("A benefit is denied if an 'employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave.'") (quoting Arban, 345 F.3d at 401). Because Leavy was never denied FMLA leave or benefits, FedEx is entitled to summary judgment as to Leavy's FMLA interference claim.

"To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) [s]he engaged in an activity protected by the Act, (2) this exercise of h[er] protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." Id. (citing Arban, 345 F.3d at 404). "In order to establish such a causal connection, a plaintiff must show some type of retaliatory intent." Id. As determined above, the temporal proximity between her taking FMLA leave and the elimination of her position is insufficient on its own to establish the requisite

causation. See Tuttle, 474 F.3d at 321; see also Bluegrass Dutch Trust Morehead, LLC, 734 F. App'x at 329. In responding to FedEx's motion for summary judgment, Leavy does not seem to even allege a causal connection between her FMLA leave and Galambos's decision to eliminate her position. (ECF No. 36, at 14.) At best, Leavy asserts a causal connection between her FMLA leave and the annual performance review completed by Galambos for fiscal year 2018, stating only that "Galambos elected to consider Leavy's absence from the office pursuant to [FMLA] leave in her FY18 performance review evaluation and Galambos, as an agent of FedEx, terminated Leavy's employment." (Id.) Although Leavy points to no evidence that Galambos improperly considered her FMLA leave when completing the annual performance review, such consideration would not establish a causal connection between Leavy taking FMLA leave and Galambos deciding to eliminate her position several months later. Nothing in the annual performance review is sufficient to establish any retaliatory intent behind Galambos's decision to eliminate Leavy's position. See Tennial, 840 F.3d at 308. Because Leavy provides no evidence to sufficiently demonstrate a causal connection between her FMLA leave and Galambos's decision to eliminate her position, Leavy cannot make out a *prima facie* case of FMLA retaliation. Accordingly, FedEx is entitled to summary judgment on this claim as well.

### III. RECOMMENDATION

Based on the above, the undersigned recommends that Leavy's motion for summary judgment be denied and FedEx's motion for summary judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

February 18, 2021
_____
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**