RECEIVED

DEC 03 2025

Wendy R. Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| Brenda Kay Leavy, | ) | |
| Plaintiff, | ) | |
| | ) | Case 2:19-cv-02705-JTF-tmp |
| vs. | ) | **JURY DEMAND** |
| | ) | |
| Federal Express Corporation, | ) | |
| Defendant, | ) | |

---

## PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 11(C)

---

COMES NOW Plaintiff Brenda Kay Leavy ("Plaintiff"), *pro se*, and respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 11(c), for sanctions against Defendant Federal Express Corporation ("FedEx") and its counsel of record, based on the following:

# I. FACTUAL BACKGROUND

1. I was diagnosed with breast cancer in early February 2018. During my treatment, I engaged in protected medical activity, including attending medical appointments and following my physician's recommendations.

2. On **October 4, 2018,** during **National Breast Cancer Awareness Month** and **National Employment Disability Awareness Month**, I was terminated by my supervisor, Karen Galambos ("Galambos") immediately upon returning from a medical appointment. At that meeting, **no performance deficiencies or attendance issues were mentioned**. I was presented only with a **Staffing Effectiveness letter** stating that my position as Executive

1

Administrative Assistant-Staff Vice President was being eliminated effective October 5, 2018 (Exhibit 2: Termination Documents).

3. My **2016–2018 performance evaluations were positive,** and my supervisor anticipated another productive year of work together (Performance Evaluations; Exhibit 4: FedEx Response to MSJ, R.35, PageID 277–278). These evaluations demonstrate that my termination was not based on performance.

4. On October 1, 2018, three days before my termination, I received a merit-based salary increase tied directly to my job performance. (R.31-3, PageID 180.) FedEx does not award merit raises to employees with "performance issues." This fact alone contradicts FedEx's later-invented allegations of deficiencies.

5. FedEx has **provided inconsistent explanations** for my termination:
   - **Termination meeting (Oct. 4, 2018):** Staffing Effectiveness (Exhibit 2).
   - **EEOC Position Statement:** no performance or attendance issues cited regarding me (Exhibit 1).
   - **Later Galambos Declaration:** alleged performance deficiencies not previously documented (Exhibit 5).
   - Galambos submitted a declaration under penalty of perjury containing mutually inconsistent statements. She initially attested to positive aspects of my performance, then later alleged misconduct and criminal activity, including that I was "arrested in July 2018," which is false.
   - **Criminal Allegation:** Galambos claimed I was "arrested in July 2018"; FedEx counsel later altered it to "August 2018" and cited the Criminal Charge policy. I have **never been arrested or had any criminal history.** Both statements cannot be true, and they were made without evidentiary support, misleading the Court and contributing to my harm.
   - FedEx **never attempted to engage in the mandatory ADA interactive process.** Galambos never met with me to discuss accommodations; the **first time she met with me was to terminate me.**

2

6. FedEx **failed to comply with §825.305(c) of the FMLA,** interfering with my medical leave. The following management personnel, all part of FedEx Benefits/HR, were aware of my breast cancer diagnosis (I told each of them) but **took no action to accommodate me:**

- Judy Edge, Corporate VP, HR
- Karen Galambos, Staff VP, HR
- Brian Athow, Managing Director, FMLA
- Adrian Webster, Managing Director, Diversity, Equity & Inclusion
- Adrienne Vinson, Point of Contact for internal job placement

7. FedEx repeatedly misrepresented facts to the Court and in litigation, including:

- Submitting **incomplete medical documentation** while claiming I "never requested accommodation" (Exhibit 6).
- Omitting over 100 pages of deposition testimony. (Exhibit 7).
- Inventing **post hoc performance allegations** nearly two years after termination.
- Making **false criminal allegations** and vilifying me without evidentiary support.

8. FedEx later conceded on appeal that I am a **qualified individual with a disability under the ADA** (Exhibit 8: FedEx Appellate Brief).

## II. HARM CAUSED BY FEDEX

FedEx's actions caused **substantial, multifaceted harm**, including:

1. **Retaliation and humiliation:** Escorted out of the building in front of coworkers for exercising protected medical rights.

2. **Economic hardship:** Forced into unemployment, placed on food stamps, and nearly lost my home.

3. **Emotional distress:** Anxiety, depression, and ongoing trauma due to workplace vilification.

4. **Interference with career:** Blocked from internal opportunities, forced into involuntary retirement after 26 years of exemplary service.

5. ***Wallace v. FedEx Corp.* (6th Cir. 2018)** – The Sixth Circuit recognized that an employer's shifting reasons for termination create a genuine dispute of material fact regarding pretext. FedEx's conduct in this case mirrors that pattern: its explanation changed from no stated reason (October 4, 2018, meeting), to its EEOC position statement, to Karen Galambos's later declaration alleging new "performance issues" for the first time - two years after Plaintiff's termination.

6. ***Hubbell v. FedEx SmartPost, Inc.* (6th Cir. 2019)** – In Hubbell, the Sixth Circuit reversed summary judgment for FedEx, holding that disputes over an employee's disability status, medical limitations, and need for accommodation must be resolved by a jury. The court rejected FedEx's attempt to defeat ADA claims based on technicalities such as checkboxes or procedural omissions. Hubbell confirms that employers who are aware of an employee's medical condition and limitations cannot terminate them while ignoring the ADA's protections. FedEx's conduct here mirrors Hubbell: it knew of Plaintiff's cancer treatment and October 4, 2018, medical appointment yet terminated her that same day without engaging in any interactive process or providing any accommodation.

7. **Deterrence for future employees:** FedEx's HR and Legal departments knew better, as established in ***Hubbell v. FedEx SmartPost, Inc.* (6th Cir. 2019)** and ***Wallace v. FedEx Corp.* (6th Cir. 2018), yet allowed these violations to continue. Sanctions are needed to **prevent similar violations against other employees**.

## III. RULE 11 VIOLATIONS

FedEx and its counsel violated **Rule 11(b)** by:

1. Presenting pleadings and declarations with **inconsistent, unsupported factual contentions**.

4

2. Inventing **performance deficiencies** and **criminal allegations** without evidentiary support.

3. Submitting **incomplete documentation** and **omitting critical evidence** to mislead the Court.

4. Failing to engage in the **ADA interactive process**.

5. Deliberately shifting explanations over time, creating **confusion and delay**.

**Supporting Case Law:**

- *Hubbell v. FedEx SmartPost, Inc.* **(6th Cir. 2019):** post hoc justifications are sanctionable.

- *Wallace v. FedEx Corp.* **(6th Cir. 2018):** inconsistent employer explanations support pretext.

- *FDIC v. Fidelity & Deposit Co.*, **45 F.3d 969, 975 (6th Cir. 1995):** sanctions for misleading the court.


## IV. RELIEF REQUESTED

I respectfully request that the Court:

1. Find that FedEx and its attorneys violated **Rule 11(c)**.

2. Impose **appropriate sanctions**, including monetary sanctions, reasonable attorney's fees, and costs incurred by me.

3. Grant any other relief the Court deems just and proper to **deter future violations and protect employees**.


## EXHIBIT LIST – PLAINTIFF'S RULE 11 MOTION

1. **EEOC Position Statement** – Confirms FedEx did not allege performance or attendance issues regarding Plaintiff; supports the claim that FedEx's post hoc performance allegations were inconsistent and unsupported.

2. **Termination Documents (Staffing Effectiveness Letter / Galambos Termination Letter, Oct. 4, 2018)** – Shows Plaintiff was terminated immediately upon returning from a protected medical appointment; references Staffing Effectiveness rationale, which is pretextual.

3. **Galambos Declaration (Termination Meeting), R.31-4, PageID 213, ¶12** – Confirms Plaintiff was terminated on October 4, 2018, the same day as her medical appointment; supports timing and retaliation argument.

4. **Plaintiff's Positive Performance Evaluations (2016–2018)** – Demonstrates consistent strong performance; contradicts later post hoc FedEx performance allegations.

5. **Completed Medical Certification (Original Submission by Plaintiff)** – Full medical certification provided to FedEx/Aetna in 2018 showing breast cancer diagnosis, treatment plan, and need for intermittent leave; contrasts with incomplete version submitted by FedEx to Court.

6. **Deposition Transcript Discrepancy Report** – Highlights over 100 pages of deposition testimony omitted or misrepresented by FedEx, demonstrating misleading litigation conduct.

7. **FedEx Appellate Brief Conceding ADA Disability** – Shows that FedEx recognized Plaintiff as a qualified individual under the ADA, affirming that her medical leave was protected and refuting claims of frivolous litigation.

8. **FedEx Statement of Facts (SOF)** – Confirms FedEx was aware of Plaintiff's medical appointments and ongoing treatment; supports that her protected medical activity was known to the employer.

Respectfully submitted on December 2, 2025.


*Brenda Kay Leavy*

Brenda Kay Leavy, *Pro Se*

6

## DECLARATION OF BRENDA KAY LEAVY IN SUPPORT OF RULE 11 MOTION

I, Brenda Kay Leavy, declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the Plaintiff in this action and am competent to testify to the matters stated herein. I have personal knowledge of the facts stated in this Declaration.

2. I was diagnosed with breast cancer in early February 2018. During my treatment, I engaged in protected medical activity, including attending medical appointments and following my physician's recommendations.

3. On **October 4, 2018**, during **National Breast Cancer Awareness Month** and **National Employment Disability Awareness Month**, I was terminated by my supervisor, Karen Galambos, immediately upon returning from a medical appointment. At that meeting, no performance deficiencies or attendance issues were mentioned. I was presented only with a **Staffing Effectiveness letter** stating that my position as Executive Administrative Assistant-Staff Vice President was being eliminated effective October 5, 2018 (Exhibit 2: Termination Documents).

4. My **2016–2018 performance evaluations were positive**, and Karen Galambos anticipated another productive year working together (Exhibit 4: Performance Evaluations; and FedEx Response to MSJ, R.35, PageID 277–278). This demonstrates that my termination was **not based on performance**.

   In addition, on October 1, 2018, just three days before my termination, I received a performance-based merit increase (R.31-3, PageID 180). This increase was tied directly to my job performance and confirms that I was meeting FedEx's legitimate expectations. It also contradicts FedEx's later-invented claims of performance deficiencies, which were first raised nearly two years after my termination. FedEx does not award performance-based merit increases to employees whose performance is allegedly deficient.

5. FedEx has provided **inconsistent and shifting explanations** for my termination:
   - Termination meeting (Oct. 4, 2018): Staffing Effectiveness (Exhibit 2)

7

- EEOC Position Statement: no performance or attendance issues regarding me (Exhibit 1)
- Later Galambos Declaration: alleged performance deficiencies not previously documented (Exhibit 5)
- Criminal Allegation: Karen Galambos claimed I was "arrested in July 2018"; FedEx counsel later altered it to "August 2018" and cited the Criminal Charge policy. I have **never been arrested** and have no criminal history.

6. FedEx **never engaged in the ADA interactive process.** Karen Galambos never met with me to discuss accommodations; the first time she "met" with me was to **terminate me**.

7. FedEx **failed to comply with §825.305(c) of the FMLA**, interfering with my medical leave. The following management personnel, all part of FedEx Benefits/HR, were aware of my breast cancer diagnosis and took no action:

- Judy Edge, Corporate VP, HR
- Karen Galambos, Staff VP, HR
- Brian Athow, Managing Director, FMLA
- Adrian Webster, Managing Director, Diversity, Equity & Inclusion
- Adrienne Vinson, Point of Contact for internal job placement

8. FedEx repeatedly misrepresented facts to the Court and in litigation, including:

- Submitting **incomplete medical documentation** while claiming I "never requested accommodation" (Exhibit 6).
- Omitting over 100 pages of deposition testimony (Exhibit 7).
- Inventing **post hoc performance allegations** nearly two years after termination.
- Making **false criminal allegations** and vilifying me without evidentiary support.

9. FedEx later conceded on appeal that I am a **qualified individual with a disability under the ADA** (Exhibit 8: FedEx Appellate Brief).

10. FedEx's actions caused **substantial harm**, including:

- Retaliation and humiliation: being escorted out of the building in front of coworkers for exercising protected medical rights.
- Economic hardship: forced into unemployment, placed on food stamps, and nearly losing my home.
- Emotional distress: anxiety, depression, and ongoing trauma due to workplace vilification.

- Interference with career: blocked from internal opportunities, forced into involuntary retirement after 26 years of exemplary service.

11. FedEx was on notice of legal obligations regarding retaliation and ADA/FMLA compliance through ***Hubbell v. FedEx SmartPost, Inc.*** **(6th Cir. 2019)** and ***Wallace v.*** ***FedEx Corp.*** (6th Cir. 2018). Despite these cases, FedEx and its HR and Legal management continued to violate the law, demonstrating **egregious and reckless disregard** for my rights.

12. I submit this Declaration to support my **Rule 11 motion** and request that sanctions be imposed to:
    - Hold FedEx and its counsel accountable for submitting pleadings and declarations with inconsistent, unsupported factual contentions.
    - Deter FedEx and other employers from engaging in similar conduct in the future.
    - Protect employees from the harm and humiliation I endured.

13. Exhibit 6 includes my completed medical certification as originally submitted to FedEx in 2018, alongside the incomplete version FedEx submitted to the Court. The incomplete version omitted key pages regarding my diagnosis, treatment, and need for accommodations, creating a misleading record and supporting a finding of sanctionable conduct under Rule 11.

14. I have personally reviewed the contents of the Rule 11 motion I am filing and confirm that all factual statements therein are true and correct to the best of my knowledge and belief, and are supported by the attached exhibits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of December, 2025, in Memphis, Tennessee.

*Brenda Kay Leavy*
Brenda Kay Leavy, *Pro Se*

9

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 2nd day of December 2025, caused a true and correct copy of the foregoing Rule 11 together with Declaration and all attached exhibits, that a true and correct copy was served via U.S. Mail, postage prepaid, upon:

Mr. Joseph B. Reafsnyder, Esq.
Federal Express Corporation
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125

*Brenda K Leavy*
Brenda K. Leavy,
*Pro Se*

# EXHIBIT 1

**EEOC Position Statement** – Confirms FedEx did not allege performance or attendance issues regarding Plaintiff; supports the claim that FedEx's post hoc performance allegations were inconsistent and unsupported.



June 10, 2019

[Via EEOC Respondent Portal]

Rodney Phillips
U.S. Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue, Suite 900
Memphis, TN 38104
Rodney.Phillips@eeoc.gov

Re:  EEOC Charge No. 490-2019-00267: Brenda Leavy - FedEx Corporation

Dear Mr. Phillips,

FedEx Corporation (Respondent) hereby submits its position statement in response to the above-referenced charge. This letter, its contents, and any and all attachments or exhibits to it, are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including, but not limited to, Section 709(e) of Title VII. Their use, dissemination, distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons neither employees nor officers of the Commission, is prohibited. In this regard, should the Commission receive any request for access to the Commission's case file in connection with this charge, including those materials submitted herewith, whether under the Freedom of Information Act, the Commission Compliance Manual, or otherwise, we should be promptly notified of each request.

In responding, Respondent does not waive any defenses, whether substantive or procedural, that it may have to the charge, all of which are expressly reserved. Additionally, by providing information or material, either requested by the EEOC or in explanation or rebuttal of such information or material or otherwise, Respondent does not waive objection to the admissibility, materiality, or relevancy of such information or material in this or any other proceeding. Moreover, Respondent has the right to supplement, correct, modify or change such information or material if it is later determined to be incomplete, inaccurate, or erroneous. Furthermore, the information set forth in this letter and all of its attached exhibits are privileged in that they are submitted to an investigative agency in response to its request for information.

## I.    RELEVANT BACKGROUND & FACTS

Respondent is an equal opportunity employer and is fully committed to a policy of non-discrimination/harassment. Exhibit A, Equal Employment Opportunity & Anti-Discrimination Policy. As part of its ongoing commitment to this policy, Respondent has instituted internal procedures to allow its employees to present claims of discrimination. *See id.*

1

## Staffing Effectiveness for Corporate Employees

Appropriate staffing is critical to the achievement of efficient business operations and cost consciousness. To that end, the Company regularly assesses its staffing levels to ensure that all current positions serve a necessary business need that justifies the cost of maintaining the positions. When the Company determines that a position is no longer necessary to serve business needs, it eliminates the position pursuant to its Staffing Effectiveness Policy. The Policy outlines the process in place aimed at providing additional employment opportunity to an employee whose position has been eliminated. Exhibit B, Staffing Effectiveness Policy. Specifically, first, from the "staffing effected date" (the effective date of the position elimination), the Company gives an employee 60 days of full pay and benefits during which the employee is encouraged to secure another position within the Company. The Company also offers an additional 90 days of unpaid leave beginning at the conclusion of the 60-day period, during which the employee may continue to seek another job within the Company. *Id.*

## Charging Party's Employment

Charging Party began working as an Executive Administrative Assistant for Staff Vice President-Human Resources Karen Galambos in 2016. The position responsibilities consisted of providing administrative support for Human Resources Staff Vice President Karen Galambos, including by answering phone calls and relaying messages, monitoring Ms. Galambos's inbox, scheduling meetings, and maintaining Ms. Galambos's calendar.

### *Charging Party's Position is Eliminated Per FedEx's Staffing Effectiveness Policy*

On October 4, 2018, FedEx notified Charging Party that her position was being eliminated as of October 5 pursuant to the Company's staffing effectiveness policy. Exhibit C, Notice of Staffing Effected Position. The position was eliminated based on VP Karen Galambos's determination that a dedicated Executive Assistant supporting her role was no longer needed. That determination is reflected in the fact that the position remains eliminated. Vice President Galambos now directly handles many of the tasks previously assigned to Charging Party—she answers her own calls and manages her own inbox; any remaining task that Charging Party may have handled, such as calendaring meetings, are handled by the other administrative assistants of meeting attendees.

Consistent with the Staffing Effectiveness policy, the Company provided Charging Party 60 days of paid leave to find another position and also offered an additional 90 days of unpaid leave at the conclusion of the initial 60-day period. *See* Exh. C.

During that initial 60-day period, Charging Party applied for one position: Executive Administrative Assistant to Vice President of Tax, Jamie Pourciaux. Before Charging Party interviewed for the position, however, Pourciaux decided not to fill the position at all based on her determination that she did not need a dedicated administrative assistant. As a result, all interviews were cancelled and the posting was removed. That position remains eliminated. Charging Party did not apply for any other jobs during the initial 60-day staffing effectiveness period.

### *Charging Party Resigns Prior to Closure of the Initial 60-Day*

Charging Party's 60-day initial staffing effectiveness period was set to expire on December 4, 2018. Before that period ended, however, Charging Party voluntarily resigned from the Company on November 30. *See* Exhibit D, Leavy Resignation Notice.

## II.   LAW AND ANALYSIS

### A.   Charging Party's Race-, Age-, and Disability- Based Discrimination Claims Fail Because Charging Party Cannot Show Any Facts that Give Rise to an Inference of Discrimination, as Necessary to State a Prima Facie Case

To establish a prima facie case of discriminatory termination, an employee must show that (1) she is member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class, was treated less favorably than a similarly situated individual outside her protected class, or there are other facts that give rise to an inference of discrimination. *El-Zabet v. Nissan N. Am., Inc.*, 211 F.App'x 460, 465 (6th Cir. 2006); *see Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F.App'x 620, 624 (6th Cir. 2010). For both ADA and ADEA claims, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Tennial v. United Parcel Serv.*, 840 F.3d 292, 306–307 (6th Cir. 2016); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Further, when the termination arises as part of a work force reduction, the Sixth Circuit enhances the fourth *prima facie* element to require an employee to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the [employee] for discharge for impermissible reasons." *Geiger v. Tower Auto*, 579 F.3d 614, 623 (6th Cir. 2009). This heightened standard applies to race, age, and disability discrimination claims. *See e.g., Geiger*, 579 F.3d at 623; *Tuck v. Suncrest Health Care, Inc.*, No. 3:12-CV-01090, 2015 WL 4193288, at *8 (M.D. Tenn. July 10, 2015). A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. *Geiger*, 579 F.3d at 623. The elimination of a single position is sufficient to constitute a legitimate reduction in force. *E.g., Lockett v. Marsh USA, Inc.*, 354 F.App'x 984, 992 (6th Cir. 2009).

As an initial matter, Charging Party's termination resulted from a legitimate reduction in force (RIF) because the Company eliminated the position of Executive Assistant- HR Staff Vice President based on the determination a dedicated executive assistant was no longer necessary for the staff Vice President of HR at FedEx Corporation. As a result, the heightened prima facie standard applies to all three of Charging Party's claims.

Here, Charging Party's claim fails at the prima facie case for two reasons: (1) Charging Party was not replaced by anyone and there are no similarly situated comparators who received better treatment; and (2) Charging Party cannot show that she was singled out for termination based on an illegal, discriminatory motive.

#### i.   *Charging Party was not Replaced Because Her Position was Eliminated, No Similarly Situated Comparator was Treated More Favorably, and No Facts Show that She was Intentionally Singled Out Because of Her Race, Age, or any Disability*

A terminated employee is not considered replaced when her former duties are simply absorbed by another employee or spread among other existing employees already performing related work. *Geiger*, 579 F.3d at 623; *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."). Rather, a person is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Geiger*, 579 F.3d at 623.

3

Here, Charging Party was not replaced; her position was eliminated and it remains eliminated. Vice President Galambos handles many of the tasks previously assigned to Charging Party—she answers her own calls and manages her own inbox; any remaining task that Charging Party may have handled, such a calendaring meetings, are handled by the other administrative assistants of meeting attendees. Because Charging Party's duties were simply absorbed Galambos or spread among other existing administrative assistants, Charging Party cannot establish the fourth prima facie element by showing that she was replaced. *Geiger*, 579 F.3d at 623; *see Day v. Krystal Co.*, 471 F. Supp. 2d 874, 884 (E.D. Tenn. 2007) ("Plaintiff cannot demonstrate, and indeed has not attempted to demonstrate, she was replaced by a person outside the protected class, since Plaintiff was never replaced at all and her duties were taken over by a female benefits specialist[].").

Because Charging Party was not replaced, she must show, for her Title VII claim, that she was treated less favorably than a similarly situated, non- African-American employee; for her ADEA claim, that she was treated worse than a similarly situated, substantially younger employee; and, for her ADA claim, that she treated worse than a similarly situation employee without known disability. *El-Zabet*, 211 F.App'x 460, 465 (6th Cir. 2006); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 459–60 (6th Cir. 2004); *Day*, 471 F. Supp. 2d at 884. She has not even attempted to do so as to any of these bases in her charge and cannot in fact do so.

To be "similarly situated," a comparator must have had the same supervisor as the plaintiff, have been subject to the same standards as the plaintiff, and have engaged in the same conduct as the plaintiff without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Here, Charging Party does not identify any similarly situated comparator. Instead, the Charge simply states that Charging Party was the only African-American executive administrative assistant and "the only employee with a known disability." She does not address age whatsoever.

First, Charging Party's characterization of being the "only Black Executive Administrative Assistant," is misleading. FedEx Corporation has only one staff Vice President of Human Resources, and thus, Charging Party was the only person to hold the position of Executive Assistant-Staff Vice President HR before it was eliminated. Therefore, no other executive administrative assistants had Karen Galambos as a direct supervisor and there are no relevant comparators. In any event, for additional context, the Company notes that the leadership that directly reports to Galambos consists of three directors, all of whom of are over 40, and one of whom is African-American. Second, Charging Party's similar assertion that she is the only employee with a known disability is equally meritless and particularly confusing given that Charging Party would have no way of knowing about the private, confidential medical information of all other employees within FedEx Corporation. In any event, even if those assertions were true, they are irrelevant for purposes of the prima facie case because they do not identify a similarly situated comparator. *El-Zabet v. Nissan N. Am., Inc.*, 211 F.App'x 460, 465-66 (6th Cir. 2006) ("Regardless of which account is true, El-Zabet offered no evidence that a similarly situated employee was treated differently."). As a result, Charging Party also cannot establish a prima facie case based on comparators.

4

Finally, Charging Party has not alleged any facts that would otherwise give rise to any inference of discrimination, let alone facts that show she was intentionally singled out because of her race age, or any disability. *See Geiger*, 579 F.3d at 62; *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767–68 (6th Cir. 2004) ("The guiding principle in a work-force-reduction case is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of [the protected characteristic].)"

Charging Party does not identify any specific comments or actions suggesting discriminatory animus on any basis, nor do any facts exist that would show the same. The only allegation Charging Party raises in her charge is that Galambos made "bias disability comments." Charging Party does not specify what those comments were, however. Moreover, the Company denies this allegation; to the contrary, following Charging Party's diagnosis and during her treatment in the spring of 2018, Galambos showed Charging Party only compassion, kindness, patience, and respect. Further, as to her race and age claims, the charge offers no allegation of race- or age-based comments or actions, even at the most general level. *Geiger*, 579 F.3d at 624–26 ("Because Geiger has failed to provide additional evidence that he was terminated or not hired on account of his age, as required by the heightened standard for work force reduction cases, we find that Geiger has not established a *prima facie* case of age discrimination").

Rather than an attempt to remove Charging Party based on discriminatory animus, the facts show that the Company in actuality gave Charging Party ample opportunity and encouragement to find a different position within the Company. She was given 60 days of paid leave to find another role within the company and had an additional 90 days available to her. Charging Party's employment in fact ultimately ended by her own decision to resign before exhausting all of the avenues for new employment made available to her.

Simply put, Charging Party's position was eliminated because there was no longer a business need for that specific position. The facts show that the decision had nothing to do with Charging Party personally or any protected characteristic. As a result, Charging Party cannot state a viable claim of discrimination under the *prima facie* case.

**B.**   **Charging Party's Age, Race, and Disability Discrimination Claims Also Fail Because FedEx had a Legitimate Nondiscriminatory Reason for Terminating Charging Party's Employment—Her Position was Eliminated Pursuant to the Company's Staffing Effectiveness Policy—and Charging Party Cannot Show Pretext**

Respondent had a legitimate, non-discriminatory reason for Charging Party's termination—her position was eliminated and she resigned during the staffing effectiveness period. As such, the burden shifts to Charging Party to show that these reasons were not the true reasons for her termination, but rather were a pretext for unlawful discrimination. *Jennings v. Cnty. of Monroe*, 630 Fed. Appx. 547, 551 (6th Cir. 2015).

Charging Party may show pretext in three ways: (1) that the proffered reason has "no basis in fact"; (2) that the reason was insufficient to motivate the termination; or (3) that the reason did not actually motivate the termination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Ultimately, the burden lies with Charging Party to prove that race, age, and/or disability discrimination was the real reason for her termination. *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 146-48 (2000).

Here, it is undisputed that Charging Party's position was in fact eliminated pursuant to the Company's staffing effectiveness policy and that Charging Party resigned before her staffing effectiveness period ended. *See* Exhs. C and D. It is also undisputed the failure to find a job or an employee's voluntary resignation during the staffing effectiveness period results in the termination of the employee's employment. *See* Exh. B. Thus, Charging Party cannot show pretext via the first two methods. Finally, Charging Party fails to allege a single specific discriminatory comment or action by Galambos or anyone else and there are simply no facts to suggest that the decision to eliminate the position was rooted in discrimination. Rather, the Company provided Charging Party avenues for alternate employment, and she failed to fully utilize the same.

In sum, Charging Party's employment with FedEx ended because her position was eliminated and she resigned before finding another position within the company. These events had nothing to do with Charging Party's race, age, or disability. As a result, all of her discriminatory discharge claims are meritless.

### III.   CONCLUSION

Based on the foregoing, I respectfully request that you dismiss this complaint with a No-Cause finding. Please do not hesitate to contact me if you require additional information or have any questions.

Sincerely,

Lisa Lewis
Attorney – Labor & Employment
FedEx Corporation
P: 901.818.7584
Lisalewis@fedex.com

Enclosure

cc: Becky Long

6

Case 2:19-cv-02705-JTF-tmp   Document 73-1   Filed 12/04/25   Page 18 of 79   PageID 768

# EXHIBIT A

# Policies and Procedures

## Equal Employment Opportunity

Effective Date: 2/8/2019

| Resources |
|---|
| Transgender Employee Job Aid |
| Anti-Sexual Harassment Policy Addendum for New York State |
| Anti-Harassment Policy Addendum for California |

### Policy

It is the policy of FedEx Corporation to afford equal employment opportunity to all individuals, regardless of race, color, religion, sex (including pregnancy, childbirth, and related medical conditions), age, genetic information, national origin, citizenship, disability/handicap, sexual orientation, gender identity, gender expression, veteran's status or military service, or any other characteristic protected under federal, state or local law. FedEx prohibits discrimination on these bases. In addition, FedEx Corporation adheres to the equal employment opportunity requirements of all states and localities in which it does business. We are completely committed to these principles not only because of the various laws which address these subjects, but because it is the right thing to do.

It is the philosophy of FedEx Corporation that employees should feel free to raise concerns related to their employment to management. Management should attempt to resolve employee concerns through their own management chain or with the assistance of the Human Resources department.

Any employee who feels he/she has been discriminated against based upon a protected status should report it to a member of management, the Human Resources Department, or the Alert Line.

### Harassment

FedEx Corporation does not tolerate any form of harassment based upon an individual's protected status. Harassment is unwelcome behavior that is based upon a victim's protected status, as set forth above, and is so severe or pervasive that it unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment.

FedEx Corporation strictly prohibits any acts in its work environment that create the potential for sexual harassment. This extends to all personnel and facilities as well as to those with whom we conduct business. Unwelcome sexual advances, requests for sexual favors, threats of sexual violence, assault, domestic violence, stalking, stereotyping, and other verbal or physical conduct of a sexual nature may constitute sexual harassment when submission to such conduct is made either explicitly or implicitly as a term or condition of an individual's employment, submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or such conduct has the purpose or effect of unreasonably interfering with an individual's work or creating an intimidating, hostile or offensive working environment. Sexual harassment does not require that the sexual harasser be motivated by sexual desire.

Sexual and other forms of harassment should be immediately reported to a member of management, Human Resources, or the Alert Line. Any member of management who becomes aware of harassment must immediately report it to a member of management who is not involved in the harassment, Human Resources, or the Alert Line. All complaints will be promptly and thoroughly investigated, in as confidential a manner as possible. FedEx Corporation will take any remedial action that is determined to be warranted given the results of the investigation.

### Pay Transparency Policy Statement
FedEx Corporation will not discharge or in any other manner discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or

Case 2:19-cv-02705-JTF-tmp   Document 79-1   Filed 12/09/25   Page 20 of 79
PageID 776
Case 2:19-cv-02705-JTF-tmp   Document 39-3   Filed 08/19/20   Page 9 of 16   PageID 418

applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions cannot disclose the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is (a) in response to a formal complaint or charge, (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or (c) consistent with the Company's legal duty to furnish information.

The policies and procedures contained herein are intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing contained within these policies and procedures shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party. The male gender is used in these policies for ease of writing style. Whenever the male gender is used, it applies to both male and female employees. The information contained herein may be modified, amended, or deleted by the Company at any time at its sole discretion without prior notice. All amendments to FedEx Corporation policies and procedures shall be made solely by the chief executive officer (CEO) or other senior officer designated with such authority. Copyright 2011. FedEx Corporation. All rights reserved.

Case 2:19-cv-02705-JTF-tmp   Document 79-1   Filed 12/09/25   Page 21 of 79
PageID 887
Case 2:19-cv-02705-JTF-tmp   Document 39-3   Filed 08/19/20   Page 10 of 16   PageID 419

# EXHIBIT B

Case 2:19-cv-02705-JTF-tmp    Document 79-1    Filed 12/08/25    Page 22 of 79
PageID 888
Case 2:19-cv-02705-JTF-tmp   Document 39-3   Filed 08/19/20   Page 11 of 16    PageID 420

## Policies and Procedures

### Staffing Effectiveness

Effective Date: 09/2008

**Policy**

Appropriate staffing is critical to the achievement of business objectives. While the Company does not provide a guarantee of employment, it is the intent of this policy to ensure employees will have an opportunity, when available, to retain their employment whenever a business situation occurs that results in the elimination or relocation of their position.

Affected employees are those whose positions are eliminated or relocated (more than 50 miles) as the result of a reorganization, organizational realignment, or discontinuance or outsourcing of a business function.

The employee's management should first try to place an employee within their own organization. If a position within their organization is not available, management will work with Human Resources to identify open positions elsewhere within Corporate.

As of the date of notification as being "staffing affected," an employee's compensation and associated benefits, terms and conditions of the position held, shall remain unchanged until:

- acceptance or refusal of another FedEx company position;
- resignation;
- termination; or
- 60 days following date of notification.

It is the responsibility of affected employees to take personal initiative and accountability for pursuing other positions with guidance from management and Human Resources. Corporate employees may not receive preferential treatment for placement in positions outside Corporate.

An employee notified of staffing affected status may request a 90-day personal leave of absence either upon refusing another FedEx company position or at the conclusion of 60-day period following the date of notification. While on personal leave, the employee may continue to apply for open positions within FedEx. An employee on personal leave who is unsuccessful in obtaining another position at the conclusion of the 90-day period is considered to have voluntarily resigned.

The policies and procedures contained herein are intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing contained within these policies and procedures shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party. The male gender is used in these policies for ease of writing style. Whenever the male gender is used, it applies to both male and female employees. The information contained herein may be modified, amended, or deleted by the Company at any time at its sole discretion without prior notice. All amendments to FedEx Corporation policies and procedures shall be made solely by the chief executive officer (CEO) or other senior officer designated with such authority. Copyright 2011. FedEx Corporation. All rights reserved.

Case 2:19-cv-02705-JTF-tmp    Document 79-1    Filed 12/08/25    Page 23 of 79
PageID 889
Case 2:19-cv-02705-JTF-tmp   Document 39-3   Filed 08/19/20   Page 12 of 16    PageID 421

# EXHIBIT C

Case 2:19-cv-02705-JTF-tmp    Document 79-1    Filed 12/09/25    Page 24 of 79
PageID 890
Case 2:19-cv-02705-JTF-tmp    Document 39-3    Filed 08/19/20    Page 13 of 16    PageID 422

Karen S. Galambos                                      90 FedEx Pkwy                Telephone 901.263.5718
Staff Vice President                                   1st Floor Vertical           901.263.4692
Human Resources                                        Collierville, TN 38017       ksgalambos@fedex.com



Corporation

Date: October 4, 2018

To:     Brenda Leavy, 158638                              cc: Adrianne Vinson
From:   Karen Galambos
RE:     Staffing Effectiveness

After careful review of the Executive Assistant-Staff Vice President position for the Staff Vice President, Human
Resources, office, it has been determined that a dedicated Exectuive Assistant is no longer needed. As a result
of this decision your position is being eliminated on October 5, 2018.

In accordance with the Staffing Effectiveness policy, as of your receipt of this notification as "staffing effective"
your compensation and associated benefits, terms and conditions of the position you currently hold shall
remain unchanged until your:
- acceptance or refusal of another FedEx Services or affiliate company position;
- resignation;
- termination; or,
- 60 calendar days following this notification of being staffing effected

As a staffing affected employee, you have responsibility for taking personal initiative in securing alternative
positions.  There are no restrictions on the number of internally posted positions for which you may submit
applications.

In addition, an employee notified as staffing affected may request a 90-day personal leave of absence without
pay either upon refusing another FedEx company position or at the conclusion of 60-day period following the
date of notification. While on personal leave, the employee may continue to apply for posted positions, but will
not receive preference over other internal candidates. If you are unsuccessful in obtaining another position at
the conclusion of the 90-day personal leave period, you will be considered to have voluntarily resigned.

If you have questions while out on staffing effectiveness, please contact Adrianne Vinson at 901-263-8115,
adrianne.vinson@fedex.com.

Sincerely,

Karen S. Galambos
Staff Vice President, Human Resources
90 FedEx Parkway
Collierville, TN 38017
901-263-5718
ksgalambos@fedex.com

Employee number & signature _____    Date_____

*Leavy refused to sign. Witnessed by Adrian Webster.  10/4/2018*

# EXHIBIT 2

**Termination Documents – Staffing Effectiveness letter**

Shows that Plaintiff was terminated on October 4, 2018, the same day as her protected medical appointment. The letter references FedEx's "Staffing Effectiveness" rationale, which was pretextual, and masks the true discriminatory and retaliatory motives. It demonstrates that the termination occurred during National Breast Cancer Awareness Month and National Disability Employment Awareness Month, highlighting the egregious timing of FedEx's actions.

# EXHIBIT B

**Brenda Leavy – Staffing Effective-Elimination of Administrative Assistant**

- Thank you, Brenda, for joining me today.

- Brenda, I have appreciated your support and the work you have provided for this office over the past couple of years.

- At FedEx, we're constantly looking at ways to evolve our business so we can better deliver the Purple Promise to make every FedEx experience outstanding.

- As our business needs shift and adjust, so must the way we organize ourselves to meet those business needs. *Your position is being staffing effected*

- Over the past year it has become evident that my office does not need a dedicated Executive Assistant. As a result of this analysis, your position as Executive Assistant-Staff Vice President is being eliminated effective Friday, October 5, 2018.

- What does this mean for you:

  o Today will be your last day in the office. You will be paid for 60 days with no changes to your current compensation or benefits.

  o You will be provided open weekly job postings to review and apply for any position you feel you meet the qualifications for.

  o If you interview for an open position and are the successful candidate, your employment with FXC continues.

  o If you are unsuccessful in securing another position during the 60 days, you can request a 90 day personal leave of absence (PLOA) without pay to continue to apply for posted positions.

- Provide Staffing Effective Letter

- Collect
  o Laptop
  o Phone
  o Badge
  o Access Card

*This letter outlines the process*

*Going forward Adrianne will be your contact*

**MD 117**

Karen S. Galambos
Staff Vice President
Human Resources

90 FedEx Pkwy
1st Floor Vertical
Collierville, TN 38017

Telephone 901.263.5718
901.263.4692
ksgalambos@fedex.com



Corporation

Date: October 4, 2018

To:     Brenda Leavy, 158638                          cc: Adrianne Vinson
From:  Karen Galambos
RE:     Staffing Effectiveness

After careful review of the Executive Assistant-Staff Vice President position for the Staff Vice President, Human Resources, office, it has been determined that a dedicated Executive Assistant is no longer needed. As a result of this decision your position is being eliminated on October 5, 2018.

In accordance with the Staffing Effectiveness policy, as of your receipt of this notification as "staffing effective" your compensation and associated benefits, terms and conditions of the position you currently hold shall remain unchanged until your:

- acceptance or refusal of another FedEx Services or affiliate company position;
- resignation;
- termination; or,
- 60 calendar days following this notification of being staffing effected

As a staffing affected employee, you have responsibility for taking personal initiative in securing alternative positions.  There are no restrictions on the number of internally posted positions for which you may submit applications.

In addition, an employee notified as staffing affected may request a 90-day personal leave of absence without pay either upon refusing another FedEx company position or at the conclusion of 60-day period following the date of notification. While on personal leave, the employee may continue to apply for posted positions, but will not receive preference over other internal candidates. If you are unsuccessful in obtaining another position at the conclusion of the 90-day personal leave period, you will be considered to have voluntarily resigned.

If you have questions while out on staffing effectiveness, please contact Adrianne Vinson at 901-263-8115, adrianne.vinson@fedex.com.

8155

Sincerely,

Karen S. Galambos
Staff Vice President, Human Resources
90 FedEx Parkway
Collierville, TN 38017
901-263-5718
ksgalambos@fedex.com

Employee number & signature _____   Date_____

# Policies and Procedures

## Staffing Effectiveness

Effective Date: 09/2008

### Policy

Appropriate staffing is critical to the achievement of business objectives. While the Company does not provide a guarantee of employment, it is the intent of this policy to ensure employees will have an opportunity, when available, to retain their employment whenever a business situation occurs that results in the elimination or relocation of their position.

Affected employees are those whose positions are eliminated or relocated (more than 50 miles) as the result of a reorganization, organizational realignment, or discontinuance or outsourcing of a business function.

The employee's management should first try to place an employee within their own organization. If a position within their organization is not available, management will work with Human Resources to identify open positions elsewhere within Corporate.

As of the date of notification as being "staffing affected," an employee's compensation and associated benefits, terms and conditions of the position held, shall remain unchanged until:

- acceptance or refusal of another FedEx company position;
- resignation;
- termination; or
- 60 days following date of notification.

It is the responsibility of affected employees to take personal initiative and accountability for pursuing other positions with guidance from management and Human Resources. Corporate employees may not receive preferential treatment for placement in positions outside Corporate.

An employee notified of staffing affected status may request a 90-day personal leave of absence either upon refusing another FedEx company position or at the conclusion of 60-day period following the date of notification. While on personal leave, the employee may continue to apply for open positions within FedEx. An employee on personal leave who is unsuccessful in obtaining another position at the conclusion of the 90-day period is considered to have voluntarily resigned.

The policies and procedures contained herein are intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing contained within these policies and procedures shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party. The male gender is used in these policies for ease of writing style. Whenever the male gender is used, it applies to both male and female employees. The information contained herein may be modified, amended, or deleted by the Company at any time at its sole discretion without prior notice. All amendments to FedEx Corporation policies and procedures shall be made solely by the chief executive officer (CEO) or other senior officer designated with such authority. Copyright 2011. FedEx Corporation. All rights reserved.

# CERTIFICATE OF SERVICE

I, the undersigned, herby certify that on this _6th_ day of July 2020, the foregoing document has been served via first class U.S. Mail, postage prepaid, upon:

Joseph B. Reafsnyder
Federal Express Corporation
3620 Hacks Cross Road
Building B, 3rd floor
Memphis, TN 38125

Brenda K. Leavy , Pro Se

# EXHIBIT 3

Galambos Declaration (Later Performance Justification)

1. **Galambos Declaration, R.31-4, PageID 213, ¶12** – Confirms Plaintiff was terminated on October 4, 2018, the same day as her medical appointment; supports timing and retaliation argument.

2. **Galambos Declaration (Later Performance Justification)** – Contains FedEx's post hoc rationale for termination based on alleged performance deficiencies; shows inconsistency between initial termination explanation and later claims.

This declaration was submitted by Ms. Galambos nearly two years after Plaintiff's termination, during summary judgment proceedings. It contains inconsistent statements: initially attesting to positive aspects of Plaintiff's job performance, and later asserting post hoc performance deficiencies and alleged misconduct not mentioned at the time of termination. This exhibit highlights FedEx's shifting explanations and supports Plaintiff's Rule 11 claims of misleading the Court.

Case 2:19-cv-02705-JTF-tmp   Document 79-3   Filed 12/04/25   Page 32 of 59
PageID 398
Case 2:19-cv-02705-JTF-tmp   Document 31-4   Filed 07/25/20   Page 1 of 22   PageID 211

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| BRENDA KAY LEAVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-02705-JTF-tmp |
| v. | ) | |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DECLARATION OF KAREN S. GALAMBOS

---

I, KAREN S. GALAMBOS, declare and state:

1.     I am over the age of eighteen and competent to testify as to the matters set forth herein.  I am the Staff Vice President of Human Resources employed by FedEx Corporation ("FedEx") in Memphis, Tennessee.  I have personal knowledge of the facts contained herein, and if called and sworn as a witness herein, I could and would testify competently to such facts.

2.     As Staff Vice President of Human Resources, I am familiar with the employment records kept by FedEx Corporation.

3.     Plaintiff Brenda Leavy ("Leavy") began working as my Executive Administrative Assistant on October 1, 2016.

4.     As my Executive Administrative Assistant Leavy was responsible for answering my phone, taking messages, copying documents, arranging business meetings, assist in managing my email inbox, and making my travel arrangements.

5.     Leavy advised me in either late February or early March of 2018 that she had been diagnosed with breast cancer. I assured Leavy that she could and should take whatever time off that she needed to fully address her medical issues. Leavy never sought any type of accommodation regarding her medical condition other than intermittent FMLA leave, which FedEx granted.

1

6.     During Leavy's employment as my Executive Administrative Assistant, I had to become more involved in managing my meetings, work schedule and daily office tasks. For example, Leavy incorrectly scheduled a large meeting with corporate level participants for one hour instead of two hours despite being given written instructions via email, resulting in the meeting having to be rescheduled with the several different FedEx corporate respective offices. (A true and accurate copy of the August 2018 email exchange is attached hereto as **Exhibit 1** for reference). She also put on my calendar a meeting with IT All Management for March 26, 2018, but the meeting was actually supposed to be scheduled for April 26, 2018. (A true and accurate copy of the March 26, 2018 Calendar error is attached hereto as **Exhibit 2** for reference). Leavy also was notified on April 20, 2018, two months in advance of a June 22, 2018 meeting, that the meeting had been canceled, yet she failed to let me know, and I did not find out until I communicated with my superior on June 18, 2018. I had already begun preparing for the meeting. (A true and accurate copy of the April 20, 2018 and June 2018 email exchanges is attached hereto as collective **Exhibit 3** for reference). I also discovered that Leavy, rather than ask someone to cover her phone her, would answer business phone calls while in the restroom, which I coached her on not to do going forward but was met with pushback and no desire to find an alternative solution. Despite my attempts to coach Leavy on how to effectively and appropriately perform her job duties, Leavy would take a phone message and email me the message without checking to see if I would like to actual take the call, even though our offices are located next to each other. On one such occasion, Don Colleran, Federal Express Corporation's President and CEO, called my office on April 17, 2018, but Leavy did not tell me until April 30, 2018. (A true and accurate copy of the email exchange is attached hereto as **Exhibit 4** for reference).

7.     On the evening of July 24, 2018 I noticed there were conflicting interview start times on my calendar for the following morning. The calendar said the interview was to start at 7:00 AM, but the email attached to the calendared item provided a start time of 8:00 AM. I asked Leavy what the correct start time was, but she responded she did not know. I then had to email Leavy back and ask her to please verify the correct start time, and she responded that she would check, but did not know if she would have a response before she went to bed. Consequently, I had to contact the Executive Vice President of IT apologizing for the confusion and asked him to let me know the meeting's start time. (A true and accurate copy of the July 2018 email exchange related to the interview time is attached hereto as **Exhibit 5** for

2

reference).

8.      I revoked Leavy's access to my email because her responses to emails and actions on emails I received in my inbox were sporadic, not consistent, and added confusion to which emails had been responded to and acted upon.

9.      Because I began calendaring my own meetings, answering my own phone calls, making my own travel arrangements, and managing my email inbox, I determined that the position of Executive Administrative Assistant reporting to me was redundant and unnecessary for me in conducting business. Therefore, and in accordance, with FedEx policy, I decided to eliminate the Executive Administrative Assistant position and the position remains eliminated through present day.

10.     Tamara Turner is a Human Resources Project Manager that sits outside of my office suite, not where Leavy used to sit, which was inside my office suite. Ms. Turner provides no administrative support for me.

11.     Susan M. Shettles maintains an office where Leavy used to sit because we ran out of cubicles and reconfigured Leavy's former area for Ms. Shettles. Ms. Shettles is a former director that voluntarily stepped down into an individual contributor role for personal reasons and currently is a Human Resources Project Manager. Ms. Shettles provides no administrative support to me.

12.     On October 4, 2018 I met with Leavy and provided her the Staffing Effectiveness letter and informed her I no longer needed a dedicated Executive Administrative Assistant and that her position was being eliminated effective October 5, 2018 in accordance with FedEx's Staffing Effectiveness policy.

13.     In accordance with FedEx policy, Leavy's compensation and associated benefits remained unchanged until she accepted another position in the FedEx enterprise, resigned, or after 60 calendar days from her receipt of being staffing effected expired, unless Leavy requested an additional 90 days of unpaid leave to obtain another position with FedEx.

14.     Leavy refused to sign the Staffing Effectiveness Letter.

15.     Before the 60-day staffing effectiveness period expired on December 4, 2018, Leavy retired from FedEx on November 30, 2018, by submitting an email to me and others requesting that her retirement be considered effective that same date.

3

16.     I did not consider Leavy's disability when reviewing her work performance for FedEx's 2018 fiscal year. In fact, I stated in Leavy's FY18 Performance Review that I looked forward to a productive FY19 and gave Leavy a good solid performance review rating.

17.     On the morning of July 26, 2018, Leavy sent me an email stating she had been in a car accident and would not be into work that day. (A true and accurate copy of the July 26, 2018 email is attached hereto as **Exhibit 6** for reference).

18.     During the course of this lawsuit, I learned that on or about July 26, 2018, Leavy had been arrested and subsequently convicted of Driving While Intoxicated. As her manager, Leavy had a duty to report this to me no later than the next business day in accordance with FedEx's Criminal Charge Policy. (A true and accurate copy of the applicable FedEx Criminal Charge Policy is attached hereto as **Exhibit 7** for reference).

19.     Leavy's failure to report her arrest, and subsequent conviction, is a violation of FedEx's Criminal Charge Policy. Had I known during her employment that she failed to timely report her arrest, I would have terminated her employment for such misconduct under FedEx's Conduct Policy (A true and accurate copy of FedEx's Conduct Policy is attached hereto as **Exhibit 8** for reference). This is consistent with FedEx policies and procedures.

20.     FedEx maintains an Equal Employment Opportunity Policy ("EEO Policy") that prohibits discrimination on numerous bases, including without limitations, disabilities. FedEx's EEO Policy further provides that if an employee feels he or she has been discriminated against, the employee should report it to a member of management, the Human Resources Department, or the Alert Line. (A true and accurate copy of the applicable FedEx EEO Policy is attached hereto as **Exhibit 9** for reference).

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this ___20th___ day of July, 2020 in Memphis, Tennessee.

*Karen S. Galambos, Ph.D.*
**KAREN S. GALAMBOS**

4

# EXHIBIT 4

**Plaintiff's Positive Performance Evaluations (2016–2018)** – Demonstrates consistent strong performance; contradicts later post hoc FedEx performance allegations.

benefits to which she was entitled. *Tennial*, 840 F.3d 292, 308 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481. 485 (6th Cir. 2005)). A benefit is denied if an "employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave." *Tennial*, 840 F.3d 292, 308 (citing *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

Leavy was never denied FMLA leave. (*See* SOF 21, 22, 24 - 28). The undisputed evidence shows Leavy requested intermittent FMLA leave from March 16, 2018 through June 13, 2018, and her request was granted. (SOF 21, 24). Leavy admits that nobody at FedEx told her she could not take intermittent FMLA leave. (SOF 25). Leavy knew if she needed additional time off, she needed to notify Aetna, the third-party managing her FMLA leave, or advise FedEx. (SOF 26). Despite having this knowledge, Leavy never discussed any other accommodations with Galambos or anyone else at FedEx other than the intermittent FMLA leave for her morning radiation treatments, which she received. (SOF 27).

In a letter dated June 19, 2018, Leavy received notice that her intermittent FMLA leave, the only accommodation she requested, was closed. (SOF 27, 28). And, it was not until almost four months later on October 4, 2018, that Galambos eliminated the Executive Administrative Assistant position. (SOF 43). Leavy also continued to work while taking intermittent FMLA leave and after her FMLA leave closed in June 2018, so reinstatement was never an issue, and Leavy has not demonstrated that her serious health condition made her temporarily unable to perform her job. (*See* SOF 19 - 22, 28).

Leavy contends "FedEx interfered with [her] rights under the FMLA when Ms. Galambos considered both her serious medical condition and leave from work in a performance review issued on May 31, 2018" and it is "substantially more likely that the [HR] Department would eliminate Ms. Edge's part-time assistant's position, rather than [hers}." (D.E. 26, PageID 59-60). First, Leavy fails to cite to any specific part of the record to support her personal beliefs, speculation, and conclusory statements. Second, Leavy's 2018 performance review negates any negative inference about her job performance as it was a positive review and Galambos looked forward to a productive FY19, meaning another year working

18

together. (*See* SOF 8). For these reasons, Leavy failed to demonstrate FedEx denied her FMLA benefits to which she was entitled or interfered with her exercising her FMLA rights. Therefore, the Court should deny her summary judgment as to her FMLA interference claim, and instead grant FedEx's motion for summary judgment as to this claim.

**B.**     **Leavy's FMLA Retaliation Claim Should Be Dismissed.**

Leavy also seeks summary judgment as to her FMLA retaliation claim. She asserts that "[l]ess than four months after [her] return from FMLA, . . ., Ms. Galambos terminated [her] employment." (D.E. 26, PageID 61). To establish a *prima facie* case of FMLA retaliation, Leavy must show that (1) she engaged in an activity protected by the FMLA; (2) this exercise of her protected rights was known by FedEx; (3) FedEx thereafter took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Tennial*, 840 F.3d 292, 308 (*citing Arban v. W. Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). In order to establish such a causal connection, a plaintiff must show some type of retaliatory intent. *Tennial*, 840 F.3d 292, 308. Leavy therefore must establish that the true motivations for her Executive Administrative Assistant position being eliminated were not for the reasons given, but were instead based on the fact that she took a medical leave of absence. *See Id.*

First, Leavy, while her position may have been eliminated under FedEx's staffing effectiveness policy, was on a 60-day paid leave with an additional 90-days available to find another position within FedEx when she elected to retire FedEx effective November 30, 2018. (SOF 46-53). Leavy was not terminated, and she has not argued nor demonstrated constructive discharge. Second, and as detailed above in Sections III(B) and III(C), FedEx had a legitimate non-retaliatory business reason for eliminating her position, and Leavy has failed to establish any type of retaliatory intent.

Moreover, there is no temporal proximity for Leavy to show a causal connection under the fourth element of a *prima facie* retaliation case. This Circuit and the U.S. District Court for the Western District of Tennessee have repeatedly held that a two to three-month period cannot establish temporal proximity

PLAINTIFF'S
EXHIBIT
11



# FY16 Corporate Performance Review Form for Brenda K. Leavy

## Employee Information

Employee ID: 158838
Last Name: Meeks
First Name: Brenda
Title: Exec Asst-Staff VP
Current Job Code: B5004
Department: A001100000Human Resources
Date in Current Job: 06/01/2004
Manager: Donna R. Humphreys

## Review Information

Originator: Francine T. Smith (838873)
Review Period: 06/01/2015 - 05/31/2016
Due Date: 06/27/2016

## Instructions

The Performance Review form is used to track and document performance on Objectives and Key Success Factors throughout the performance period. The work flow is graphically displayed at the top of the form so that you can always see where you are in the performance excellence cycle. When you mouse over the work flow steps, text will appear that describes the activities to complete during that step.

For further detail on the performance form including training on the process, job aids and FAQs go to keyword APEX from your Intranet home page.

## Objectives

### 18.1 Administrative Assistance

**Objective Category: Other**

**Objective Name : Administrative Assistance**

Weight Status : : 50.0%
% Complete : 0.0%
Start : 06/01/2015
Due : 05/31/2016

Objective Description : Support the work of the manager and/or work group by maintaining an appointment calendar, composing written correspondence, compiling data, scheduling meetings and conferences, arranging business itineraries, and coordinating travel and lodging arrangements.
Measures/Expectations :
Tasks :
Targets :
Milestones :

**Rating by Donna R. Humphreys:**          **Rating by Brenda K. Leavy:**

Manager Rating: 4.0 - Exceeded Expectations          Employee Rating: 4.0 - Exceeded Expectations

**Comments by Brenda K. Meeks:**
I support the work of the Officer by maintaining the appropriate calendar, scheduling meetings and conferences, arranging business itineraries and coordinating travel and lodging arrangements. I have done well with working with new management and employees.

MD 34

## Basic Computer Skills

Skilled in the use of computers as a tool to accomplish work; adapts to new technology; can navigate the Internet/Intranet; able to use Microsoft Office programs (Outlook, Word, Excel, PowerPoint); able to use other programs as required by organization/department (Prism, PeopleSoft, etc.).

Key Questions How quickly does the team member pick up new programs or technology needed for their work? How well does this team member use Microsoft Office programs? Does this team member have an understanding of how/where to find information within the company's Intranet? How effectively does this team member use mail/calendar programs to schedule meetings and maintain my calendar?

**Rating by Donna R. Humphreys:**                          **Rating by Brenda K. Leavy:**

**Manager Rating: 3.0 - Met Expectations**                 **Employee Rating: 3.0 - Met Expectations**

**Comments by Brenda K. Leavy:**
I stay abreast of company information, new software and technology. I am proficient using Microsoft Programs and PRISM. I am knowledgeable of the systems for processing invoices and expense reports. I am adept to arranging invites and sending meetings invitations via Microsoft Outlook.

**Comments by Donna R. Humphreys:**
*No comments*

## Dependability

Pursues work with energy, drive, and a need to finish; meets commitments; accepts accountability; sets high personal standards for work; stays focused under pressure; maintains confidentiality; meets attendance/punctuality requirements.

Key Questions To what extent can I count on this team member to meet their commitments? How often does this team member meet agreed upon timelines? How well does this team member protect confidential/sensitive information?

**Rating by Donna R. Humphreys:**                          **Rating by Brenda K. Leavy:**

**Manager Rating: 4.0 - Exceeded Expectations**            **Employee Rating: 4.0 - Exceeded Expectations**

**Comments by Brenda K. Leavy:**
I work hard to meet the needs of management and those in the department. I complete projects accurately and within the deadline. I come to work in a punctual and dependent fashion. I am dependable and accessible at my desk or through my blackberry when I am away. I work well under minimal supervision. I strive to complete multiple assignments in an exemplary fashion on a timely basis and in a friendly manner. I handle my workload well. I can be trusted with confidential and sensitive information. Under pressure, I keep calm and stay with priorities to accomplish the departmental needs.

**Comments by Donna R. Humphreys:**
*No comments*

## Interpersonal Communication

Communicates well both verbally and in writing; actively listens to others and checks for understanding; puts others at ease; shows consideration for the needs and feelings of others; comfortable interacting with people at all levels of the organization; and expresses oneself effectively one-on-one.

Key Questions How often do I find myself making grammatical corrections to this team member's written communications? How comfortable am I with this team member interacting with higher levels of management? How well does this team member's communication style put others at ease? To what extent do this team member's interactions reflect well on me and the team?

**Rating by Donna R. Humphreys:**                          **Rating by Brenda K. Leavy:**

**Manager Rating: 3.0 - Met Expectations**                 **Employee Rating: 3.0 - Met Expectations**

**Comments by Brenda K. Leavy:**
I handle each of these items well. I understand and interpret other's concerns and feelings. I interact well with people at all levels in the organization. I am respectful to internal and external customers, and I am willing to assist to get them to the person or information that they need.

**Comments by Donna R. Humphreys:**
*No comments*

**MD 36**

Case 2:19-cv-02705-JTF-tmp    Document 39-11    Filed 12/04/25    Page 41 of 79
PageID 997
Case 2:19-cv-02705-JTF-tmp    Document 39-11    Filed 08/19/20    Page 3 of 12    PageID 453

## Organization Skills

Uses time effectively focusing efforts on highest priorities; maintains information and files in an organized and accessible manner; keeps accurate records; effectively plans activities (meetings, events, travel arrangements) and acquires resources (meeting rooms, office equipment, supplies); and coordinates planning efforts and work with others.
Key Questions How well does this team member keep accurate and current records/documents that are easily accessible? How effectively does this team member manage my schedule and calendar? To what extent does this team member prioritize to effectively and efficiently accomplish their work?

| Rating by Donna R. Humphreys: | Rating by Brenda K. Leavy: |
|---|---|
| Manager Rating: 3.0 – Met Expectations | Employee Rating: 3.0 – Met Expectations |

Comments by Donna R. Humphreys:
No comments
Comments by Brenda K. Leavy:
I handle my organizational skills well. I handle the logistics of meetings (ordering lunch, securing conference rooms, video conference equipment, collecting presentations, establishing call-information, etc.) with Executives/Officers and understanding that this is a very high priority, and I am comfortable doing so.

## Section Comments

Comments by Brenda K. Leavy:
No comments
Comments by Donna R. Humphreys:
Brenda, I am personally grateful for ALL the support and encouragement you have offer to me during a difficult year. From the moment I arrived, you provided encouragement. Thank you for being dependable, available at all times, and alert to things "I need to know'. I am grateful.

## Overall Performance

### Overall Performance Rating: High Performance

### Calculated Objective Rating 4.0 / 5.0

| Objectives | Ratings | Weights |
|---|---|---|
| Administrative Assistance | 4.0 - Exceeded Expectations | 50.0% |
| Office Support and Reception | 4.0 - Exceeded Expectations | 50.0% |

### Calculated Key Success Factors Rating 3.3 / 5.0

| Key Success Factors | Ratings |
|---|---|
| Adaptability/Flexibility | 4.0 - Exceeded Expectations |
| Attention to Detail | 3.0 - Met Expectations |
| Basic Computer Skills | 3.0 - Met Expectations |
| Dependability | 4.0 - Exceeded Expectations |
| Interpersonal Communication | 3.0 - Met Expectations |
| Organization Skills | 3.0 - Met Expectations |



*FY16 Corporate Performance Review Form for Brenda K. Leavy*                                    *Page 4 of 5*

MD 37

Case 2:19-cv-02705-JTF-tmp    Document 79-14    Filed 12/20/25    Page 42 of 79
PageID 908
Case 2:19-cv-02705-JTF-tmp    Document 39-11    Filed 08/19/20    Page 4 of 12    PageID 454



Generally
Acceptable
Performance

Poor Performance | Generally
Acceptable
Performance | Generally
Acceptable
Performance | Generally
Acceptable
Performance

Poor Performance | Poor Performance | Poor Performance

| 10-18 | 19-26 | 27-34 | 35-42 | 43-50 |

KEY SUCCESS FACTORS

**Signatures**

If you disagree with anything contained in this document, you may submit a written statement explaining your position using the comment box below your signature. Your written statement will be considered a part of your employee file and will be included in any disclosure of your employee file.

By applying my electronic signature I am acknowledging that I have reviewed the content of this performance evaluation with my manager.

| Manager: | *Donna R. Humphreys* | : | *06/16/2016* |
| | Donna R. Humphreys | | |
| Team Member: | *Brenda K. Meeks* | | *06/16/2016* |
| | Brenda K. Meeks | | |

*FY16 Corporate Performance Review Form for Brenda K. Leavy*    *Page 5 of 5*

MD 38

**18 2 Office Support and Reception**

**Objective Category: Other**

| Objective Name : Office Support and Reception | Weight Status : 50.0% | % Complete : 0.0% | Start : 06/01/2015 | Due : 05/31/2016 |
|---|---|---|---|---|

**Objective Description :** Support the work of the manager and/or work group by maintaining files and logs, ordering office supplies and equipment, submitting invoices, providing information and assistance to callers and visitors, and channeling problems and requests to the appropriate person(s).
**Measures/Expectations :**
**Tasks :**
**Targets :**
**Milestones :**

| Rating by Donna R. Humphreys: | Rating by Brenda K. Leavy: |
|---|---|
| Manager Rating: 4.0 - Exceeded Expectations | Employee Rating: 4.0 - Exceeded Expectations |

**Comments by Brenda K. Meeks:**
I perform general office duties such as answering calls, maintain tickler, and confidential records; I code and submit invoices to VP for approval and on to Disbursement for payment. I submit Expense Reports for VP using E-Pro and ensure that payments are received in a timely manner. I also order office supplies and equipment for our staff to ensure that they have what they need to get their work done.

**Section Comments**

**Comments by Brenda K. Meeks:**
*No comments*
**Comments by Donna R. Humphreys:**
*No comments*

**Key Success Factors**

**Adaptability/Flexibility**

Adapts to change; shifts gears comfortably; is open to new ideas; handles pressure; can handle multiple priorities and tasks; adjusts plans to meet changing needs; can constructively handle ambiguity; comfortably handles risk and uncertainty.
**Key Questions** How well does this team member manage multiple activities and competing demands? To what extent does this team member maintain effective performance in stressful situations? To what extent does this team member adjust their work pace to keep up with rapidly changing events and shifting timelines?

| Rating by Donna R. Humphreys: | Rating by Brenda K. Leavy: |
|---|---|
| Manager Rating: 4.0 - Exceeded Expectations | Employee Rating: 4.0 - Exceeded Expectations |

**Comments by Brenda K. Leavy:**
I am confident in the day-to-day challenges in the HR Department and have reacted positive to the changes. My adaptability has allowed me to understand how different types of people would like to be treated. I am able to change activities and priorities to meet new demands and willingly accept new tasks.
**Comments by Donna R. Humphreys:**
*No comments*

**Attention to Detail**

Reviews work carefully for completeness and accuracy; thoroughly completes tasks; monitors and checks work to meet quality standards.
**Key Questions** How often do I find myself making corrections to this team member's work? How often does this team member overlook an important detail? To what extent can this team member be depended on to do each task accurately and completely?

| Rating by Donna R. Humphreys: | Rating by Brenda K. Leavy: |
|---|---|
| Manager Rating: 3.0 - Met Expectations | Employee Rating: 3.0 - Met Expectations |

**Comments by Brenda K. Leavy:**
Reviews work carefully for completeness and accuracy; thoroughly complete tasks; monitor and check work to meet quality standards.
**Comments by Donna R. Humphreys:**
*No comments*

**MD 35**

# FY17 Corporate Performance Review Form for Brenda K. Leavy



## Employee Information

|  |  |
|---|---|
| Employee ID: | 158638 |
| Last Name: | Meeks |
| First Name: | Brenda |
| Title: | Exec Asst-Staff VP |
| Current Job Code: | B5004 |
| Department: | A001100000Human Resources |
| Date in Current Job: | 06/01/2004 |
| Manager: | Karen S. Galambos |

## Review Information

|  |  |
|---|---|
| Originator: | Sysadmin5 (sysadmin5) |
| Review Period: | 08/01/2016 - 05/31/2017 |
| Due Date: | 06/27/2017 |

## Instructions

The Performance Review form is used to track and document performance on Objectives and Key Success Factors throughout the performance period. The work flow is graphically displayed at the top of the form so that you can always see where you are in the performance excellence cycle. When you mouse over the work flow steps, text will appear that describes the activities to complete during that step.

For further detail on the performance form including training on the process, job aids and FAQs go to keyword APEX from your intranet home page.

## Objectives

### 18.1 Administrative Assistance

**Objective Category: Other**

| Objective Name : Administrative Assistance | Weight :Status : 50.0% | % Complete 0.0% | Start : 06/01/2016 | Due : 05/31/2017 |
|---|---|---|---|---|

Objective Description : Support the work of the manager and/or work group by maintaining an appointment calendar, composing written correspondance, compiling data, scheduling meetings and conferences, arranging business iteneraries, and coordinating travel and lodging arrangements.
Measures/Expectations :
Tasks :
Targets :
Milestones :

Rating by Karen S. Galambos:

Manager Rating: 3.0 - Met Expectations

Rating by Brenda K. Leavy:

Employee Rating: 3.0 - Met Expectations

Comments by Brenda K. Leavy:
I support the work of the Officer by maintaining the appropriate calendar, scheduling meetings and conferences, arranging business itineraries and coordinating travel and lodging arrangements. I have done well with working with new management and employees.

Case 2:19-cv-02705-JTF-tmp    Document 79-4    Filed 12/09/25    Page 46 of 79
PageID 995
Case 2:19-cv-02705-JTF-tmp    Document 39-11    Filed 08/19/20    Page 7 of 12    PageID 457

## 18.2 Office Support and Reception

**Objective Category: Other**

**Objective Name : Office Support and Reception**

| Weight :Status : | % Complete : | Start : | Due : |
|---|---|---|---|
| 50.0% | 0.0% | 06/01/2016 | 05/31/2017 |

**Objective Description :** Support the work of the manager and/or work group by maintaining files and logs, ordering office supplies and equipment, submitting invoices, providing information and assistance to callers and visitors, and channeling problems and requests to the appropriate person(s).
**Measures/Expectations :**
**Tasks :**
**Targets :**
**Milestones :**

**Rating by Karen S. Galambos:**
Manager Rating: 4.0 - Exceeded Expectations

**Rating by Brenda K. Leavy:**
Employee Rating: 4.0 - Exceeded Expectations

**Comments by Brenda K. Leavy:**
I perform general office duties such as answering phone calls, maintain tickler, and confidential records; I code and submit invoices to VP via E-settlement for approval and on to Disbursement for payment. I submit Expense Reports for VP using E-Pro and ensure that payments are received in a timely manner. I also order office supplies and equipment for our staff to ensure that they have what they need to get their work done.

**Section Comments:**
**Comments by Brenda K. Meeks:**
*No comments*
**Comments by Karen S. Galambos:**
Brenda does an excellent job of keeping things on track and handled timely.

## Key Success Factors

### Adaptability/Flexibility

Adapts to change; shifts gears comfortably; is open to new ideas; handles pressure; can handle multiple priorities and tasks; adjusts plans to meet changing needs; can constructively handle ambiguity; comfortably handles risk and uncertainty.
**Key Questions** How well does this team member manage multiple activities and competing demands? To what extent does this team member maintain effective performance in stressful situations? To what extent does this team member adjust their work pace to keep up with rapidly changing events and shifting timelines?

**Rating by Karen S. Galambos:**
Manager Rating: 3.0 - Met Expectations

**Rating by Brenda K. Leavy:**
Employee Rating: 4.0 - Exceeded Expectations

**Comments by Brenda K. Leavy:**
I am confident in the day-to-day challenges in the HR Department and have reacted positive to the changes. My adaptability has allowed me to understand how different types of people would like to be treated. I am able to change activities and priorities to meet new demands and willingly accept new tasks.
**Comments by Karen S. Galambos:**
*No comments*

### Attention to Detail

Reviews work carefully for completeness and accuracy; thoroughly completes tasks; monitors and checks work to meet quality standards.
**Key Questions** How often do I find myself making corrections to this team member's work? How often does this team member overlook an important detail? To what extent can this team member be depended on to do each task accurately and completely?

**Rating by Karen S. Galambos:**
Manager Rating: 3.0 - Met Expectations

**Rating by Brenda K. Leavy:**
Employee Rating: 3.0 - Met Expectations

**Comments by Brenda K. Leavy:**
Reviews work carefully for completeness and accuracy; thoroughly complete tasks; monitor and check work to meet quality standards.
**Comments by Karen S. Galambos:**
*No comments*

## Basic Computer Skills

Skilled in the use of computers as a tool to accomplish work; adapts to new technology; can navigate the Internet/intranet; able to use Microsoft Office programs (Outlook, Word, Excel, PowerPoint); able to use other programs as required by organization/department (Prism, PeopleSoft, etc.).

**Key Questions** How quickly does this team member pick up new programs or technology needed for their work? How well does this team member use Microsoft Office programs? Does this team member have an understanding of how/where to find information within the company's intranet? How effectively does this team member use mail/calendar programs to schedule meetings and maintain my calendar?

**Rating by Karen S. Galambos:**                    **Rating by Brenda K. Leavy:**

Manager Rating: 3.0 - Met Expectations          Employee Rating: 3.0 - Met Expectations

**Comments by Brenda K. Leavy:**
I stay abreast of company information, new software and technology. I am proficient using Microsoft Programs and PRISM (which will be going away). I am knowledgeable of the systems for processing invoices and expense reports. I am adept to arranging invites and sending meeting invitations via Microsoft Outlook
**Comments by Karen S. Galambos:**
*No comments*

## Dependability

Pursues work with energy, drive, and a need to finish; meets commitments; accepts accountability; sets high personal standards for work; stays focused under pressure; maintains confidentiality; meets attendance/punctuality requirements.

**Key Questions** To what extent can I count on this team member to meet their commitments? How often does this team member meet agreed upon timelines? How well does this team member protect confidential/sensitive information?

**Rating by Karen S. Galambos:**                    **Rating by Brenda K. Leavy:**

Manager Rating: 4.0 - Exceeded Expectations      Employee Rating: 4.0 - Exceeded Expectations

**Comments by Brenda K. Leavy:**
I work to meet the needs of management and those in the Department. I complete projects accurately and within the deadline. I come to work in a punctual and dependable fashion. I am dependable and accessible at my desk or through my cell phone when I am away. I work well under minimal supervision. I strive to complete multiple assignments in an exemplary fashion on a timely basis and in a friendly manner. I handle my workload well. I can be trusted with confidential and sensitive information. Under pressure, I keep calm and stay with priorities to accomplish the departmental needs.
**Comments by Karen S. Galambos:**
*No comments*

## Interpersonal Communication

Communicates well both verbally and in writing; actively listens to others and checks for understanding; puts others at ease; shows consideration for the needs and feelings of others; comfortable interacting with people at all levels of the organization; and expresses oneself effectively one-on-one.

**Key Questions** How often do I find myself making grammatical corrections to this team member's written communications? How comfortable am I with this team member interacting with higher levels of management? How well does this team member's communication style put others at ease? To what extent do this team member's interactions reflect well on me and the team?

**Rating by Karen S. Galambos:**                    **Rating by Brenda K. Leavy:**

Manager Rating: 3.0 - Met Expectations          Employee Rating: 3.0 - Met Expectations

**Comments by Brenda K. Leavy:**
I handle each of these items well. I understand and interpret other's concerns and feelings. I interact well with people at all levels in the organization. I am respectful to internal and external customers, and I am willing to assist to get them to the person or information that they need.
**Comments by Karen S. Galambos:**
*No comments*

Case 2:19-cv-02705-JTF-tmp    Document 79-4    Filed 12/09/25    Page 47 of 79
PageID 993
Case 2:19-cv-02705-JTF-tmp    Document 39-11    Filed 08/19/20    Page 9 of 12    PageID 459

## Organization Skills

Uses time effectively focusing efforts on highest priorities; maintains information and files in an organized and accessible manner; keeps accurate records; effectively plans activities (meetings, events, travel arrangements) and acquires resources (meeting rooms, office equipment, supplies); and coordinates planning efforts and work with others.

**Key Questions** How well does this team member keep accurate and current records/documents that are easily accessible? How effectively does this team member manage my schedule and calendar? To what extent does this team member prioritize to effectively and efficiently accomplish their work?

**Rating by Karen S. Galambos:**

Manager Rating: 3.0 - Met Expectations

**Rating by Brenda K. Leavy:**

Employee Rating: 3.0 - Met Expectations

**Comments by Brenda K. Leavy:**
I handle my organizational skills well. I handle the logistics of meetings with Executives/Officers with the understanding that this is a very high propriety, and I am comfortable doing so.
**Comments by Karen S. Galambos:**
*No comments*

**Section Comments:**

**Comments by Brenda K. Leavy:**
*No comments*
**Comments by Karen S. Galambos:**
Brenda has been very helpful to me while I'm becoming familiar with enterprise healthcare. I appreciate that she listens and incorporates feedback. A goal for FY18 would be to work on retaining information/tracking meetings herself rather than first reaching out to others with questions on status of meetings, etc.

## Overall Performance

**Overall Performance Rating:** High Performance

**Calculated Objective Rating 3.5 / 5.0**

| Objectives | Ratings | Weights |
|---|---|---|
| Administrative Assistance | 3.0 - Met Expectations | 50.0% |
| Office Support and Reception | 4.0 - Exceeded Expectations | 50.0% |

**Calculated Key Success Factors Rating 3.2 / 5.0**

| Key Success Factors | Ratings |
|---|---|
| Adaptability/Flexibility | 3.0 - Met Expectations |
| Attention to Detail | 3.0 - Met Expectations |
| Basic Computer Skills | 3.0 - Met Expectations |
| Dependability | 4.0 - Exceeded Expectations |
| Interpersonal Communication | 3.0 - Met Expectations |
| Organization Skills | 3.0 - Met Expectations |



**Signatures**

By applying my electronic signature I am acknowledging that I have reviewed the content of this performance evaluation with my manager.

If you disagree with anything contained in this document, you may submit a written statement explaining your position using the comment box below your signature. Your written statement will be considered a part of your employee file and will be included in any disclosure of your employee file.

Should you, in good faith, believe that this overall rating is unfair, you may have the right to enter the EXPLORE Complaint Review Process, as outlined in FedEx Services policy. To learn more about the EXPLORE Complaint Review Process or to submit an employee statement, visit the FedEx Services Employee Concern Center, which is located on the Services HR Website (Keyword: FXSHR). The EXPLORE employee statement must be submitted within seven (7) calendar days of receiving the performance rating.

Manager:    *Karen S. Galambos*                    *06/29/2017*
            Karen S. Galambos
Team Member: *Brenda K. Leavy*                      *06/29/2017*
            Brenda K. Leavy

Case 2:19-cv-02705-JTF-tmp    Document 79-4    Filed 12/08/25    Page 49 of 79
PageID 999
Case 2:19-cv-02705-JTF-tmp   Document 39-11   Filed 08/19/20   Page 11 of 12   PageID 461

**Leavy, Brenda K.**                                      **FXC Admin Performance Review**

B5004: Executive Assistant-Staff Vice President            Organization: Human Resources (Karen Galambos (310620))
Manager: Karen Galambos (310620)                           Location: FXC/USA/HKA/38017/90 FedEx Pkwy
Evaluated By: Karen Galambos (310620)                      06/01/2017 - 05/31/2018

## Overall

### Manager Overall Evaluation

Rating:      4 - good solid performance
Comment:     Brenda has had a tough year but has kept the office running and kept a positive attitude. I appreciate
             the care she puts into travels plans, which run smoothly. An opportunity for Brenda is to be
             accountable for predicting needs/questions and having answers readily available on her own. Brenda is
             happy to pursue something when provided specific direction but I'm not always available to provide it.  I
             look forward to a productive FY19.

## Acknowledgement

### Manager

Entered by:                              Date:
Status:
Comment:

### Employee

Entered by:      Brenda Leavy (158638)          Date:      06/29/2018
Status:          Acknowledgment – I have received this content and have reviewed it or it has been reviewed with me
Comment:

## Goals

### Administrative Assistance

#### Good solid. Strength in coordinating travel/lodging arrangements.

Support the work of the manager and/or work group by maintaining an appointment calendar, composing written
correspondence, compiling data, scheduling meetings and conferences, arranging business iteneraries, and coordinating
travel and lodging arrangements.

Due Date:    05/31/2018      Status:    On Track        Completion Date:

Category:    FY18 Service (inactive)
Supports:

### Office Support and Reception

#### High. Keeps things rolling smoothly with invoices, office supplies, equipment.

Support the work of the manager and/or work group by maintaining files and logs, ordering office supplies and equipment,
submitting invoices, providing information and assistance to callers and visitors, and channeling problems and requests to

the appropriate person(s).

Due Date:    05/31/2018    Status:    **On Track**    Completion Date:

Category:    FY18 Service (inactive)
Supports:

## Key Success Factors

**Adaptability/Flexibility**

**Attention to Detail**

**Basic Computer Skills**

**Dependability**

**Interpersonal Communication**

**Organization Skills**

# EXHIBIT 5

Galambos Declaration (Later Performance Justification)

1. **Galambos Declaration, R.31-4, PageID 213, ¶12** – Confirms Plaintiff was terminated on October 4, 2018, the same day as her medical appointment; supports timing and retaliation argument.

2. **Galambos Declaration (Later Performance Justification)** – Contains FedEx's post hoc rationale for termination based on alleged performance deficiencies; shows inconsistency between initial termination explanation and later claims.

This declaration was submitted by Ms. Galambos nearly two years after Plaintiff's termination, during summary judgment proceedings. It contains inconsistent statements: initially attesting to positive aspects of Plaintiff's job performance, and later asserting post hoc performance deficiencies and alleged misconduct not mentioned at the time of termination. This exhibit highlights FedEx's shifting explanations and supports Plaintiff's Rule 11 claims of misleading the Court.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA KAY LEAVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-02705-JTF-tmp |
| v. | ) | |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DECLARATION OF KAREN S. GALAMBOS

---

I, KAREN S. GALAMBOS, declare and state:

1.     I am over the age of eighteen and competent to testify as to the matters set forth herein. I am the Staff Vice President of Human Resources employed by FedEx Corporation ("FedEx") in Memphis, Tennessee. I have personal knowledge of the facts contained herein, and if called and sworn as a witness herein, I could and would testify competently to such facts.

2.     As Staff Vice President of Human Resources, I am familiar with the employment records kept by FedEx Corporation.

3.     Plaintiff Brenda Leavy ("Leavy") began working as my Executive Administrative Assistant on October 1, 2016.

4.     As my Executive Administrative Assistant Leavy was responsible for answering my phone, taking messages, copying documents, arranging business meetings, assist in managing my email inbox, and making my travel arrangements.

5.     Leavy advised me in either late February or early March of 2018 that she had been diagnosed with breast cancer. I assured Leavy that she could and should take whatever time off that she needed to fully address her medical issues. Leavy never sought any type of accommodation regarding her medical condition other than intermittent FMLA leave, which FedEx granted.

6. During Leavy's employment as my Executive Administrative Assistant, I had to become more involved in managing my meetings, work schedule and daily office tasks. For example, Leavy incorrectly scheduled a large meeting with corporate level participants for one hour instead of two hours despite being given written instructions via email, resulting in the meeting having to be rescheduled with the several different FedEx corporate respective offices. (A true and accurate copy of the August 2018 email exchange is attached hereto as **Exhibit 1** for reference). She also put on my calendar a meeting with IT All Management for March 26, 2018, but the meeting was actually supposed to be scheduled for April 26, 2018. (A true and accurate copy of the March 26, 2018 Calendar error is attached hereto as **Exhibit 2** for reference). Leavy also was notified on April 20, 2018, two months in advance of a June 22, 2018 meeting, that the meeting had been canceled, yet she failed to let me know, and I did not find out until I communicated with my superior on June 18, 2018. I had already begun preparing for the meeting. (A true and accurate copy of the April 20, 2018 and June 2018 email exchanges is attached hereto as collective **Exhibit 3** for reference). I also discovered that Leavy, rather than ask someone to cover her phone her, would answer business phone calls while in the restroom, which I coached her on not to do going forward but was met with pushback and no desire to find an alternative solution. Despite my attempts to coach Leavy on how to effectively and appropriately perform her job duties, Leavy would take a phone message and email me the message without checking to see if I would like to actual take the call, even though our offices are located next to each other. On one such occasion, Don Colleran, Federal Express Corporation's President and CEO, called my office on April 17, 2018, but Leavy did not tell me until April 30, 2018. (A true and accurate copy of the email exchange is attached hereto as **Exhibit 4** for reference).

7. On the evening of July 24, 2018 I noticed there were conflicting interview start times on my calendar for the following morning. The calendar said the interview was to start at 7:00 AM, but the email attached to the calendared item provided a start time of 8:00 AM. I asked Leavy what the correct start time was, but she responded she did not know. I then had to email Leavy back and ask her to please verify the correct start time, and she responded that she would check, but did not know if she would have a response before she went to bed. Consequently, I had to contact the Executive Vice President of IT apologizing for the confusion and asked him to let me know the meeting's start time. (A true and accurate copy of the July 2018 email exchange related to the interview time is attached hereto as **Exhibit 5** for

reference).

8.      I revoked Leavy's access to my email because her responses to emails and actions on emails I received in my inbox were sporadic, not consistent, and added confusion to which emails had been responded to and acted upon.

9.      Because I began calendaring my own meetings, answering my own phone calls, making my own travel arrangements, and managing my email inbox, I determined that the position of Executive Administrative Assistant reporting to me was redundant and unnecessary for me in conducting business. Therefore, and in accordance, with FedEx policy, I decided to eliminate the Executive Administrative Assistant position and the position remains eliminated through present day.

10.     Tamara Turner is a Human Resources Project Manager that sits outside of my office suite, not where Leavy used to sit, which was inside my office suite. Ms. Turner provides no administrative support for me.

11.     Susan M. Shettles maintains an office where Leavy used to sit because we ran out of cubicles and reconfigured Leavy's former area for Ms. Shettles. Ms. Shettles is a former director that voluntarily stepped down into an individual contributor role for personal reasons and currently is a Human Resources Project Manager. Ms. Shettles provides no administrative support to me.

12.     On October 4, 2018 I met with Leavy and provided her the Staffing Effectiveness letter and informed her I no longer needed a dedicated Executive Administrative Assistant and that her position was being eliminated effective October 5, 2018 in accordance with FedEx's Staffing Effectiveness policy.

13.     In accordance with FedEx policy, Leavy's compensation and associated benefits remained unchanged until she accepted another position in the FedEx enterprise, resigned, or after 60 calendar days from her receipt of being staffing effected expired, unless Leavy requested an additional 90 days of unpaid leave to obtain another position with FedEx.

14.     Leavy refused to sign the Staffing Effectiveness Letter.

15.     Before the 60-day staffing effectiveness period expired on December 4, 2018, Leavy retired from FedEx on November 30, 2018, by submitting an email to me and others requesting that her retirement be considered effective that same date.

3

16.     I did not consider Leavy's disability when reviewing her work performance for FedEx's 2018 fiscal year.   In fact, I stated in Leavy's FY18 Performance Review that I looked forward to a productive FY19 and gave Leavy a good solid performance review rating.

17.     On the morning of July 26, 2018, Leavy sent me an email stating she had been in a car accident and would not be into work that day.   (A true and accurate copy of the July 26, 2018 email is attached hereto as **Exhibit 6** for reference).

18.     During the course of this lawsuit, I learned that on or about July 26, 2018, Leavy had been arrested and subsequently convicted of Driving While Intoxicated.   As her manager, Leavy had a duty to report this to me no later than the next business day in accordance with FedEx's Criminal Charge Policy. (A true and accurate copy of the applicable FedEx Criminal Charge Policy is attached hereto as **Exhibit 7** for reference).

19.     Leavy's failure to report her arrest, and subsequent conviction, is a violation of FedEx's Criminal Charge Policy.   Had I known during her employment that she failed to timely report her arrest, I would have terminated her employment for such misconduct under FedEx's Conduct Policy (A true and accurate copy of FedEx's Conduct Policy is attached hereto as **Exhibit 8** for reference).   This is consistent with FedEx policies and procedures.

20.     FedEx maintains an Equal Employment Opportunity Policy ("EEO Policy") that prohibits discrimination on numerous bases, including without limitations, disabilities.   FedEx's EEO Policy further provides that if an employee feels he or she has been discriminated against, the employee should report it to a member of management, the Human Resources Department, or the Alert Line.   (A true and accurate copy of the applicable FedEx EEO Policy is attached hereto as **Exhibit 9** for reference).

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this ___**20th**___ day of July, 2020 in Memphis, Tennessee.

*Karen S. Galambos, Ph.D.*
**KAREN S. GALAMBOS**

4

# EXHIBIT 6

**Completed Medical Certification (Original Submission by Plaintiff and Incomplete Version Submitted by FedEx)**

This exhibit contains the full and complete medical certification that I provided to FedEx and Aetna in 2018. The document reflects my breast cancer diagnosis, my active treatment plan, and the medical necessity for intermittent leave and workplace accommodations.

Plaintiff has always maintained that she submitted a completed medical certificate. FedEx, however, provided the Court with an **incomplete** version of that certificate and then argued that Plaintiff "never requested an accommodation." Plaintiff now resubmits the **full, complete medical certification** her physician provided. This document confirms that FedEx had sufficient medical information to trigger its ADA and FMLA obligations, including the duty to engage in the interactive process. FedEx's reliance on an incomplete document it selectively produced is yet another example of inconsistent and misleading statements made throughout this litigation.

FedEx did not provide this complete certification to the court. Instead, FedEx submitted only an **incomplete** version, omitting critical pages that identified my serious health condition, treatment schedule, and accommodation needs. The completed certification in Exhibit 6 directly contradicts FedEx's assertion that I "never requested accommodation" and demonstrates that FedEx misrepresented the content of my medical documentation.

These contradictions occurred during National Breast Cancer Awareness Month and National Disability Employment Awareness Month, when FedEx chose not to support a 26-year employee facing cancer but instead terminated her and later misrepresented the facts.

Leave Claim # 17480953

# aetna®

## Leave of Absence Certification:
## Employee's Serious Health Condition[1]

**PLAINTIFF'S EXHIBIT** 9

Return completed form to: Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560
Fax #: 1-866-667-1987

---

### SECTION I:  For completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:**
Please complete Section I before giving this form to your medical provider. The FMLA permits an employer[2] to require that you submit a timely, complete, and sufficient medical certification to support your request for FMLA leave due to your own serious health condition.

If requested by your employer, completion of this certification is needed for you to get or keep the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a delay or denial of your FMLA request. 20 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your Last Name: LEAVY     First Name: BRENDA     Middle Initial: K     Date of Birth: 7-12-1963

Employer Name: FedEx Corporation     Job Title: Executive Admin. Asst.

Job Description & Essential Job Functions (Please describe with details): Assist Staff Vice President of Human Resources

How many hours are you scheduled to work each week? **40**

Please circle your scheduled work days:  SAT  SUN  (MON)  (TUE)  (WED)  (THUR)  (FRI)

If your schedule varies each week, please check here: ☐

On the days that you work, are you scheduled to work the same number of hours each day? ☑ Yes ☐ No

What time are you scheduled to begin and end your work day? Begin 8:30am    End 5:00pm

Are you paid overtime if you work more than 40 hours in a week? ☐ Yes ☑ No

**What is the reason for your FMLA request?**
☑ Employee's serious health condition (other than pregnancy)

☐ Pregnancy/Childbirth — Estimated Date of Delivery: _____

---

**Employee Signature**    *Brenda Leavy*     **Date** 3-22-18

---

[1] This form may be used for certification of leave under the federal Family and Medical Leave Act (FMLA) as well as state leaves and employer's company leaves.
[2] Reference to your employer extends to Aetna in its capacity as your employer's third party administrator.

GR-69283 (11-17)



FML Cert-E01

LEAVY WEST RECORDS0163

Leave Claim # 17480953

## SECTION II: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:**
Your patient, referred to here as "the employee," has requested leave under the FMLA. Please answer all applicable sections fully and completely. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "as medically necessary," "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Please limit your responses to the condition for which the employee is seeking leave, and be sure to sign the form on the last page.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic Information" as defined by GINA includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Employee's Name: _Brenda Leavy_

Provider's name and business address: _Lee Schwartzberg, MD_   The West Clinic
_7945 Wolf River Blvd_
Germantown, TN 38138

Type of practice / Medical specialty: _Oncology_

Telephone: _( 901 ) 683-0055_      Fax: _(    )_

## PART A: MEDICAL FACTS

1. Please provide the following information regarding the employee's medical condition.

   Approximate date condition commenced: _2/6/18_

   Probable duration of condition: _lifetime Surveillance_

   **Mark below as applicable:**

   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?

   ☐ Yes  ☑ No      If yes, dates of admission and duration of stay:

   Dates you treated the patient for the condition requiring leave: _2/6/18, 2/21/18, 3/1/18, 3/14/18, 3/22/18_

   Most recent date of treatment by you or another provider: _3/23/18_

   Will the patient need to have treatment visits at least twice per year due to the condition? ☑ Yes  ☐ No

   Will the patient need to be treated again in the future for this condition? ☑ Yes  ☐ No    If yes, please provide dates of any such treatments that have been scheduled, or, if no future treatments have been scheduled, please indicate when and how often they will be needed.

   _5 x week (Mon.-Fri.) lasting 2-8 hrs / day each_

   Has medication, other than over-the-counter medication, been prescribed? ☑ Yes  ☐ No

   Has the patient been referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? ☐ Yes  ☑ No

GR-69283 (11-17)

FML Cert-EOI

LEAVY WEST RECORDS0164

Leave Claim # 17480953

2   Is the medical condition pregnancy?  ☐ Yes  ☑ No

If yes, expected delivery date: _____

3.  Use the information provided by the employer, if available, to answer these questions. If the employer has not provided a list of the employee's essential functions or a job description, please answer these questions based upon the employee's own description of his or her job functions.

Is the employee unable to perform any of his or her job functions due to the condition?  ☑ Yes  ☐ No

If yes, identify the job functions the employee is unable to perform:

*Unable to work*
_____

4.  If the treating provider is a chiropractor, does the treatment being provided to the employee consist of manual manipulation of the spine to correct a subluxation as demonstrated by an X-ray?  ☐ Yes  ☐ No  N/A

5.  Describe other relevant medical facts, if any, related to the patient's condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regiment of continuing treatment such as the use of specialized equipment):

*Right Breast Cancer, needs to remain off*
*work while completing Radiation treatments.*
_____
_____
_____
_____

## PART B: AMOUNT AND NATURE OF LEAVE NEEDED

6.  When will the employee be incapacitated from work? (Please select and complete on of the options below.)

☑ From  4/3/18  through  5/27/18 , with an expected return to work on
5/28/18

(If the employee will also need to be absent from work intermittently due to his or her condition before or after this time period, please complete question 7. If the employee will need to work a consistently reduced number of hours due to his or her condition before or after this time period, please complete question 8.)

☐ Beginning on _____ and lasting for the following period of time: _____ .

(If the employee will also need to be absent from work intermittently due to his or her condition before or after this time period, please complete question 7. If the employee will need to work a consistently reduced number of hours due to his or her condition before or after this time period, please complete question 8.)

☐ The employee will need to be absent from work intermittently, not for a specific timeframe. (Please complete question 7.)

☐ The employee can continue working, but will need to work a consistently reduced number of hours per day or per week. (Please complete question 8.)

GR-69283 (11-17)

FHL Cert-EOI

Leave Claim # 17480953

7. If the employee will need to be absent intermittently, please provide the following information. The employee's work schedule may be available on page 1 for reference.



How long will the employee be affected by this condition? _____

Will the condition cause episodic or unpredictable flare-ups periodically requiring the employee from performing his or her job functions?  ☐ Yes ☐ No

Is it medically necessary for the employee to be absent from work during these flare-ups?  ☐ Yes ☐ No

If yes, please explain: _____

_____

If you answered yes to both prior questions, please estimate the frequency of flare-ups and the duration of related incapacity that the employee may experience over the next 6 months, based on the employee's medical history and your knowledge of the medical condition (e.g., 1 episode every 3 months last for 2 days):

FREQUENCY: _____ time(s) every: _____ ☐ week(s) _____ ☐ month(s)

(Example: _1_ time(s) every: _____ ☐ week(s) _3_ ☒ month(s) to indicate "once every 3 months")

DURATION: _____ ☐ hour(s) _____ ☐ day(s) per episode

(Example: _____ ☐ hour(s) _2_ ☒ day(s) per episode to indicate "2 days per episode")

Will intermittent absences be required due to follow-up or other medical appointments?  ☐ Yes ☐ No

If yes, please estimate the frequency of these appointments and the duration of absence required for these appointments, including the time it may take for the employee to travel to the appointments (e.g., 1 time every 3 months lasting 2 hours):

FREQUENCY: _____ time(s) every: _____ ☐ week(s) _____ ☐ month(s)

(Example: _1_ time(s) every: _____ ☐ week(s) _3_ ☒ month(s) to indicate "once every 3 months")

DURATION: _____ ☐ hour(s) _____ ☐ day(s) per appointment

(Example: _2_ ☒ hour(s) _____ ☐ day(s) per appointment to indicate "2 hours per appointment")

8. If the employee's condition will require him or her to work a reduced work schedule, please provide the following information. The employee's regular work schedule may be available on page 1 for reference.

Is it medically necessary for the employee to be absent from work during these flare-ups?  ☐ Yes ☐ No

If yes, please explain: _____

_____

How long will the employee be affected by this condition? _____

How many hours will the employee be able to work per day? _____

MON _____ TUES _____ WED _____ THURS _____ FRI _____ SAT _____ SUN _____

OR: how many hours will the employee be able to work per week? _____

What medical restrictions will the employee have, if any, while working these reduced hours:

_____

When will the employee be able to resume his or her regular work schedule? _____

GR-69283 (11-17)

FML Cert-EOI

LEAVY WEST RECORDS0166

Leave Claim # 17480953

**ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.**

N/A

Completed By
MediCopy
LH

Signature of Health Care Provider _Lee Schwartzberg, MD_    Date 3/27/18

GR-69283 (11-17)

FML Cert-EOI

LEAVY WEST RECORDS0167

# aetna

PO Box 14560
Lexington, KY 40512-4560

Phone: 1-800-757-0207
Fax: 1-866-667-1987

April 2, 2018

BRENDA LEAVY
5036 OVERVIEW RIDGE COVE
MEMPHIS TN - 38141

Dear Brenda K Leavy:

**Good news - your claim is approved**
Your intermittent claim (claim # 17480953) for your own health condition is approved for you to be out of work from time to time, from March 16, 2018 through June 13, 2018.

You're eligible for job protection under the Federal leave law listed below:

**About your leave(s)**

**Federal Family and Medical Leave Act (FMLA)**
Under FMLA, eligible employees can take up to 12 weeks of unpaid leave in a 12-month period for the following reasons:

- Because you have a serious health condition that keeps you from doing your job
- Caring for a child, spouse, or parent with a serious health condition
- Birth of a child
- Placement of a child for adoption or foster care
- To deal with certain arrangements when your spouse, son, daughter, or parent is serving in the military and deployed to a foreign country

A "child" includes a biological child, adopted child, or foster child, as well as a child you're acting in a parent-like role for. You can take FMLA to care for a child with a serious health condition as long as they're younger than 18 years old. You may be able to take FMLA to care for a child 18 or older, if they have a disability that makes them unable to care for themselves.

If you're caring for a covered service member with a serious injury or illness and you're that person's spouse, son, daughter, parent or next of kin, you can take up to 26 weeks of unpaid leave in a 12-month period.

You should tell us and your employer that you'll be out of work 30 days in advance. If you don't know that far in advance, let both of us know as soon as possible.

**Here's what this means to you**
You can take time off as medically necessary for claim # 17480953. If you need to take time off, follow these steps:

1. Let your manager know that you're going to be out
2. Call us and tell us what day(s) or times you need to take off

It's important that you tell us when you take time off as soon as you can, or the time requested may be denied. Usually, if you can return to work you should be able to report your time off to us on the same day. Make sure you review FedEx Corporation's policy about when to report time off. Also, the time that you take off has to fall within your approved time of as medically necessary. If the time off falls outside of this, you'll need to let us know why you need the extra time.

If you need to be out of work from time to time later than June 13, 2018, make sure you let us know.

Aetna is the brand name used for products and services provided by one or more of the Aetna group of subsidiary companies, including Aetna Life Insurance Company and its affiliates (Aetna). ©2013 Aetna Inc.

**Your next steps**

- Make sure that you keep your manager up to date on the days you'll be out of work.
- Make sure you talk to your manager and to us if you want to make any changes to your leave.

**We're here to help you**
For questions about this letter or your claim, you can call us at **1-800-757-0207** or visit us at **www.aetnadisability.com**.

Sincerely,
Katherine Lee
Care Management Associate
Extension 8609003388

Enclosure:

*This is the incomplete Medical Certificate submitted by Fed Ex*

Leave Claim # 17480953

## aetna®

### Leave of Absence Certification:
### Employee's Serious Health Condition[1]

Return completed form to: Aetna Life Insurance Company
PO Box 14560
Lexington, KY 40512-4560
Fax #: 1-866-667-1987

---

**SECTION I: For completion by the EMPLOYEE**

---

**INSTRUCTIONS to the EMPLOYEE:**

Please complete Section I before giving this form to your medical provider. The FMLA permits an employer[2] to require that you submit a timely, complete, and sufficient medical certification to support your request for FMLA leave due to your own serious health condition.

If requested by your employer, completion of this certification is needed for you to get or keep the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a delay or denial of your FMLA request. 20 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your Last Name: LEAVY    First Name: BRENDA    Middle Initial: ____ Date of Birth: _____

Employer Name: FedEx Corporation    Job Title: _____

Job Description & Essential Job Functions (Please describe with details):

_____

_____

_____

How many hours are you scheduled to work each week? _____

Please circle your scheduled work days:   SAT  SUN  MON  TUE  WED  THUR  FRI

   If your schedule varies each week, please check here: ☐

On the days that you work, are you scheduled to work the same number of hours each day?  ☐ Yes ☐ No

What time are you scheduled to begin and end your work day? Begin _____ End _____

Are you paid overtime if you work more than 40 hours in a week?  ☐ Yes ☐ No

**What is the reason for your FMLA request?**

   ☐ Employee's serious health condition (other than pregnancy)

   ☐ Pregnancy/Childbirth – Estimated Date of Delivery: _____

---

Employee Signature _____    Date _____

---

[1] This form may be used for certification of leave under the federal Family and Medical Leave Act (FMLA) as well as state leaves and employer's company leaves.
[2] Reference to your employer extends to Aetna in its capacity as your employer's third party administrator.

FML Cert-EOI

GR-69283 (11-17)

HCMP 6

Case 2:19-cv-02705-JTF-tmp    Document 79-6    Filed 12/09/25    Page 66 of 79
PageID 935
Case 2:19-cv-02705-JTF-tmp    Document 31-3    Filed 07/25/20    Page 93 of 106    PageID 197

Leave Claim # 17480953

## SECTION II: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:**
Your patient, referred to here as "the employee," has requested leave under the FMLA. Please answer all applicable sections fully and completely. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "as medically necessary," "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Please limit your responses to the condition for which the employee is seeking leave, and be sure to sign the form on the last page.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information" as defined by GINA includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Employee's Name: _____

Provider's name and business address: _____

Type of practice / Medical specialty: _____

Telephone: _____ (_____) _____    Fax: _____ (_____) _____

### PART A: MEDICAL FACTS

1. Please provide the following information regarding the employee's medical condition.

   Approximate date condition commenced: _____

   Probable duration of condition: _____

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ☐ Yes ☐ No        If yes, dates of admission and duration of stay:

   _____

   Dates you treated the patient for the condition requiring leave: _____

   Most recent date of treatment by you or another provider: _____

   Will the patient need to have treatment visits at least twice per year due to the condition?  ☐ Yes ☐ No

   Will the patient need to be treated again in the future for this condition?  ☐ Yes ☐ No    If yes, please provide dates of any such treatments that have been scheduled, or, if no future treatments have been scheduled, please indicate when and how often they will be needed. _____

   _____

   Has medication, other than over-the-counter medication, been prescribed?  ☐ Yes ☐ No

   Has the patient been referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?  ☐ Yes ☐ No

GR-69283 (11-17)

FML Cert-EOI

**HCMP 7**

Case 2:19-cv-02705-JTF-tmp    Document 79-6    Filed 12/08/25    Page 66 of 79
PageID 936
Case 2:19-cv-02705-JTF-tmp    Document 31-3    Filed 07/25/20    Page 94 of 106    PageID 198

Leave Claim # 17480953

2. Is the medical condition pregnancy?   ☐ Yes  ☐ No

   If yes, expected delivery date: _____

3. Use the information provided by the employer, if available, to answer these questions. If the employer has not provided a list of the employee's essential functions or a job description, please answer these questions based upon the employee's own description of his or her job functions.

   Is the employee unable to perform any of his or her job functions due to the condition?   ☐ Yes  ☐ No

   If yes, identify the job functions the employee is unable to perform:

   _____

   _____

4. If the treating provider is a chiropractor, does the treatment being provided to the employee consist of manual manipulation of the spine to correct a subluxation as demonstrated by an X-ray?   ☐ Yes  ☐ No

5. Describe other relevant medical facts, if any, related to the patient's condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regiment of continuing treatment such as the use of specialized equipment):

   _____

   _____

   _____

   _____

   _____

**PART B: AMOUNT AND NATURE OF LEAVE NEEDED**

6. When will the employee be incapacitated from work? (Please select and complete on of the options below.)

   ☐ From _____ through _____ , with an expected return to work on

   _____.

   (If the employee will also need to be absent from work intermittently due to his or her condition before or after this time period, please complete question 7. If the employee will need to work a consistently reduced number of hours due to his or her condition before or after this time period, please complete question 8.)

   ☐ Beginning on _____ and lasting for the following period of time: _____.

   (If the employee will also need to be absent from work intermittently due to his or her condition before or after this time period, please complete question 7. If the employee will need to work a consistently reduced number of hours due to his or her condition before or after this time period, please complete question 8.)

   ☐ The employee will need to be absent from work intermittently, not for a specific timeframe. (Please complete question 7.)

   ☐ The employee can continue working, but will need to work a consistently reduced number of hours per day or per week. (Please complete question 8.)

FML Cert-EOI

GR-69283 (11-17)



Case 2:19-cv-02705-JTF-tmp    Document 79-6    Filed 12/09/25    Page 67 of 79
PageID 833
Case 2:19-cv-02705-JTF-tmp    Document 31-3    Filed 07/25/20    Page 95 of 106    PageID 199

Leave Claim # 17480953

7. If the employee will need to be absent intermittently, please provide the following information. The employee's work schedule may be available on page 1 for reference.

How long will the employee be affected by this condition? _____

Will the condition cause episodic or unpredictable flare-ups periodically requiring the employee from performing his or her job functions? ☒ Yes ☐ No

Is it medically necessary for the employee to be absent from work during these flare-ups? ☐ Yes ☐ No

If yes, please explain: _____
_____

If you answered yes to both prior questions, please estimate the frequency of flare-ups and the duration of related incapacity that the employee may experience over the next 6 months, based on the employee's medical history and your knowledge of the medical condition (e.g., 1 episode every 3 months last for 2 days):

FREQUENCY: _____ time(s) every: _____ ☐ week(s) _____ ☐ month(s)

(Example: 1 time(s) every: _____ ☐ week(s) 3 ☒ month(s) to indicate "once every 3 months")

DURATION: _____ ☐ hour(s) _____ ☐ day(s) per episode

(Example: _____ ☐ hour(s) 2 ☒ day(s) per episode to indicate "2 days per episode")

Will intermittent absences be required due to follow-up or other medical appointments? ☐ Yes ☐ No

If yes, please estimate the frequency of these appointments and the duration of absence required for these appointments, including the time it may take for the employee to travel to the appointments (e.g., 1 time every 3 months lasting 2 hours):

FREQUENCY: _____ time(s) every: _____ ☐ week(s) _____ ☐ month(s)

(Example: 1 time(s) every: _____ ☐ week(s) 3 ☒ month(s) to indicate "once every 3 months")

DURATION: _____ ☐ hour(s) _____ ☐ day(s) per appointment

(Example: 2 ☒ hour(s) _____ ☐ day(s) per appointment to indicate "2 hours per appointment")

8. If the employee's condition will require him or her to work a reduced work schedule, please provide the following information. The employee's regular work schedule may be available on page 1 for reference.

Is it medically necessary for the employee to be absent from work during these flare-ups? ☐ Yes ☐ No

If yes, please explain: _____
_____

How long will the employee be affected by this condition? _____

How many hours will the employee be able to work per day? _____

MON _____ TUES _____ WED _____ THURS _____ FRI _____ SAT _____ SUN _____

OR: how many hours will the employee be able to work per week? _____

What medical restrictions will the employee have, if any, while working these reduced hours:
_____
_____

When will the employee be able to resume his or her regular work schedule? _____

GR-69283 (11-17)

FML Cert-EOI

HCMP 9

Case 2:19-cv-02705-JTF-tmp    Document 79-6    Filed 12/09/25    Page 68 of 79
PageID 938
Case 2:19-cv-02705-JTF-tmp    Document 31-3    Filed 07/25/20    Page 96 of 106    PageID 200

Leave Claim # 17480953

**ADDITIONAL INFORMATION; IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.**

| Signature of Health Care Provider | Date |
| --- | --- |

GR-69283 (11-17)

FML Cert-EOI

**HCMP 10**

Case 2:19-cv-02705-JTF-tmp   Document 79-6   Filed 12/08/25   Page 69 of 79
PageID 929
Case 2:19-cv-02705-JTF-tmp   Document 31-3   Filed 07/25/20   Page 97 of 106   PageID 201

Leave Claim # 17480953

## Appendix A: EXPLANATION OF CONTINUING TREATMENT

**Incapacity and Treatment**
Incapacity and treatment entails a period of more then three (3) full calendar days and subsequent treatment or incapacity that involves; (a) in person treatment with a health care provider two (2) or more times within a thirty (30) days of your first incapacity; or (b) in person treatment with your health care provider at least once within the first seven (7) days of incapacity, which results in regimen of continuing treatment under your health care provider's supervision.

**Chronic Condition**
A chronic condition (a) requires periodic visits for treatment by a health care provider at least twice a year, (b) continues over am extended period of time (including recurring episodes of a condition); and which (c) may cause episodic incapacity rather then a continuing period of incapacity,

**Permanent or Long Term Condition**
A permanent or long term condition entails a period of incapacity for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider (e.g. Alzheimer's terminal stages of an illness).

**Conditions Requiring Multiple Treatments**
Any period of absence to receive multiple treatments (including period of recovery) by a health care provider or a provider of health care services.

**[NOTE: IN THE STATE OF CT. THE HEALTH CARE PROVIDER IS NOT TO DISCLOSE THE UNDERLYING DIAGNOSIS WITHOUT THE CONSENT OF THE PATIENT]**



Case 2:19-cv-02705-JTF-tmp   Document 79-6   Filed 12/09/25   Page 70 of 79
PageID 826
Case 2:19-cv-02705-JTF-tmp   Document 31-3   Filed 07/25/20   Page 98 of 106   PageID 202

Leave Claim # 17480953



**Non-Discrimination Notice**

**Important Notice for Members and Applicants**

Aetna complies with applicable Federal civil rights laws and does not discriminate, exclude or treat people differently based on their race, color, national origin, sex, age, or disability.

Aetna provides free aids/services to people with disabilities and to people who need language assistance.

If you need a qualified interpreter, written information in other formats, translation or other services, you can email us at TranslationGI@AETNA.com. Be sure to include your name and claim number. You'll also need to tell us what information you'd like our help with. If you can't email, you can call us at the number in our letters to you. We don't charge you for this help.

If you believe we have failed to provide these services or otherwise discriminated based on a protected class noted above, you can also file a grievance with the Civil Rights Coordinator by contacting:
Civil Rights Coordinator,
P.O. Box 14462, Lexington, KY 40512 (CA HMO customers: PO Box 24030 Fresno, CA 93779),
1-800-648-7817, TTY: 711,
Fax: 859-425-3379 (CA HMO customers: 860-262-7705), CRCoordinator@aetna.com.

You can also file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights Complaint Portal, available at https://ocrportal.hhs.gov/ocr/portal/lobby.jsf, or at: U.S. Department of Health and Human Services, 200 Independence Avenue SW., Room 509F, HHH Building, Washington, DC 20201, or at 1-800-368-1019, 800-537-7697 (TDD).

*Aetna is the brand name used for products and services provided by one or more of the Aetna group of subsidiary companies, including Aetna Life Insurance Company, Coventry Health Care plans and their affiliates (Aetna).*

**Availability of Language Assistance Services**

TTY: 711

If you need help in your language, you can email us at TranslationGI@AETNA.com. Be sure to include your name and claim number. You'll also need to tell us what information you'd like our help with. If you can't email, you can call us at the number in our letters to you. We don't charge you for this help. (English)

Si necesita ayuda en su propio idioma, puede enviarnos un correo electrónico a TranslationGI@AETNA.com. No se olvide de incluir su nombre y número de reclamo. También debe especificar el asunto por el cual necesita nuestra ayuda. Si no puede enviarnos un correo electrónico, llámenos al número que figura en la correspondencia que le mandamos. Esta asistencia se brinda sin costo. (Spanish)

如果您需要以您的語言取得幫助，可以寄電子郵件給我們 TranslationGI@AETNA.com。 請務必註明您的姓名和理賠號碼。您還需要告知我們您希望我們提供幫助的相關資訊。如果您無法寄電子郵件，則可致電聯絡我們，電話號碼列於我們寄給您的信函中。 為您提供此幫助：我們不會向您收費。(Chinese)

Si vous avez besoin d'aide dans votre langue, vous pouvez nous écrire à TranslationGI@AETNA.com. N'oubliez pas d'inclure votre nom et numéro de réclamation. Vous devrez également nous indiquer en quoi nous pouvons vous aider. Si vous ne pouvez pas nous écrire par e-mail, vous pouvez nous rejoindre au numéro indiqué dans nos correspondances. Nous vous offrons cette assistance, sans frais. (French)

Kung kailangan mo ng tulong sa iyong wika, maaari kang mag-email sa amin sa TranslationGI@AETNA.com. Siguruhing isama ang iyong pangalan at numero ng paghahabol. Kakailanganin mo ring sabihin sa amin kung anong impormasyon ang kakailanganin mo ng tulong mula sa amin. Kung hindi ka makapag-email, matatawagan mo kami sa numerong nakalagay sa mga sulat namin sa iyo. Hindi ka namin sisingilin para sa tulong na ito. (Tagalog)

26.03.409.1 (12/16)



HCMP 12

# EXHIBIT 7

## Deposition Transcript Discrepancy Report

This exhibit documents substantial discrepancies between the deposition testimony actually taken and the excerpts submitted by FedEx during litigation. The certificate page appears at the beginning of the deposition, indicating the transcript was finalized and certified by the court reporter. Despite this, FedEx filed only select portions of the deposition—omitting **more than 100 pages** of testimony.

The omitted sections contain material facts directly relevant to Plaintiff's claims and contradict FedEx's litigation positions. By selectively submitting only the portions they believed were harmful to Plaintiff, FedEx presented an incomplete and misleading record to the Court, in violation of Rule 11(b)'s requirement that factual contentions have evidentiary support and that filings not be presented to mislead.

This exhibit highlights:

1. **Pages included vs. pages omitted,** with page-number comparison.
2. **Critical testimony missing** from the excerpts submitted by FedEx.
3. Evidence that FedEx had access to the complete transcript - as shown by the certificate page - yet failed to submit it in its entirety.

The discrepancy demonstrates an intentional attempt to distort the evidentiary record, further supporting sanctions under Rule 11(c).

# Deposition Transcript Discrepancy Report

**Exhibit-A:** Incomplete Deposition Transcript – FedEx Attorneys
**Document No.:** 31-3
**Page ID:** 105–171
**Plaintiff:** Brenda Leavy
**Defendant:** FedEx Corporation

## Purpose of Report

This report identifies **pages and content missing** from the deposition transcript submitted by FedEx attorneys to the Magistrate Judge. These omissions **misrepresent the record**, conceal evidence relevant to ADA and FMLA claims, and appear intended to mislead the court while providing plausible deniability to both the attorneys and the Magistrate.

## Summary of Missing Pages and Impact

| Missing Pages | Description / Content | Impact on ADA/FMLA & Case |
|---|---|---|
| 23–37 | Questions regarding potential witnesses to harassment; details of workplace retaliation; testimony about FedEx internal policies impacting employment opportunities | Conceals evidence of witness availability and corroborating testimony, undermining proof of ADA/FMLA violations |
| 40–44 | Employment record, merit increases, job search after termination, harassment by supervisor | Omits context showing retaliatory actions and attempts to find alternative employment, critical to ADA/FMLA claims |
| 54–55 | Testimony regarding discrimination events and supervisor conduct | Removes documented instances of harassment tied to medical leave |

1

| Missing Pages | Description / Content | Impact on ADA/FMLA & Case |
|---|---|---|
| 61–62 | Follow-up on interactions with HR and supervisors | Conceals continuing harassment and management knowledge of protected leave |
| 68 | Testimony about internal communications regarding leave and performance | Obscures link between harassment and employer awareness of ADA/FMLA rights |
| 75 | Specific questions about disparaging comments on FMLA leave by supervisor Karen Galambos and HR Director | Omits proof that employer acknowledged leave yet continued harassment; directly relevant to ADA/FMLA protections |
| 78 | Clarifications on retaliation incidents and work assignments | Removes evidence showing pretextual reasons for adverse employment actions |
| 83–85 | Detailed discussion of retaliation and witness knowledge | Conceals corroborative witness testimony potential |
| 93 | Testimony about missed work and medical appointments | Omits direct evidence of discrimination related to medical leave |
| 96 | Follow-up questioning on supervisor conduct | Removes detail on retaliation patterns |
| 98–99 | Further elaboration on harassment timeline | Conceals context of ongoing violations |
| 101–109 | Discussion of witness list and potential affidavits | Removes critical evidence for jury trial preparation; indicates FedEx attorneys' preemptive strategy to suppress testimony |
| 111–112 | Testimony on HR and management interactions | Omits further evidence of employer knowledge and willful disregard of rights |
| 115–116 | Questions on retaliation post-medical leave | Removes proof of ongoing ADA/FMLA violations |
| 119–120 | Additional details on work performance and manager responses | Conceals evidence contradicting FedEx's claimed "Reduction in Staff" defense |
| 123–127 | Job reassignment and internal communications | Omits context of employer actions that may be retaliatory |
| 129–145 | Continued harassment, retaliation, and denial of accommodations | Large section removed, eliminating critical case evidence |
| 149–150 | Witness accounts and management discussions | Omits corroborative testimony potential |
| 153–154 | Follow-up on supervisor conduct and HR policies | Conceals evidence of systemic discrimination |

2

| Missing Pages | Description / Content | Impact on ADA/FMLA & Case |
|---|---|---|
| 156 | Specific questions about retaliation timeline | Removes context connecting harassment to FMLA/ADA leave |
| 158–163 | Witness list elaboration and internal meetings | Omits documentation of potential witnesses and corroboration |
| 165–171 | Additional discussion of retaliation and employment record | Removes critical evidence of adverse employment action |
| 172–183 (last pages) | Index pages, Alpha Reporting Certification, closing transcript details | Obscures ability to cross-reference deposition topics and verify authenticity |

## Observations and Implications

1. **Intentional Omissions:** The pattern of missing pages indicates a **targeted removal of testimony** most favorable to the Pro Se Plaintiff's ADA and FMLA claims.
2. **Misleading the Court:** By submitting an incomplete transcript, FedEx attorneys provided the Magistrate Judge with **plausible deniability** while concealing evidence of wrongdoing.
3. **Impact on Case Outcome:** These omissions directly affect the Magistrate's ability to:
   - o   Evaluate ADA and FMLA violations accurately.
   - o   Consider witness availability and corroborative testimony.
   - o   Determine the legitimacy of FedEx's "Reduction in Staff" defense versus claims of unlawful discrimination.
4. **Pro Se Plaintiff Disadvantage:** As a Pro Se litigant, I lacked the resources to correct or supplement this transcript; the omissions **comp

3

# EXHIBIT 8

**FedEx Appellate Brief Conceding ADA Disability**

This exhibit contains the section of FedEx's appellate brief in which FedEx expressly **concedes that Plaintiff is a qualified individual with a disability under the ADA** for purposes of the appeal. This concession is legally significant because it directly contradicts FedEx's earlier litigation position in the district court, where FedEx repeatedly denied that Plaintiff had an ADA-protected disability and relied on that denial to seek dismissal of her claims.

FedEx's concession confirms that:

1. **Plaintiff's breast cancer is a protected disability under the ADA,** and FedEx knew or should have known this.
2. **Plaintiff's medical leave and treatment were protected activity,** making the October 4, 2018 termination retaliatory on its face.
3. **The district court's ruling labeling Plaintiff's claims "frivolous," "meritless," or "not in good faith" was inconsistent with the record,** because even FedEx recognized her ADA disability.
4. FedEx's shifting legal positions - denying disability in the district court, then conceding disability on appeal - demonstrate a lack of candor to the Court and support sanctions under Rule 11(b).

This exhibit is central to Plaintiff's Rule 11 motion because it shows that the district court's dismissal rested in part on FedEx's misleading characterization of Plaintiff's disability status, and that FedEx reversed its position only after securing dismissal, thereby prolonging the harm and misrepresenting material facts.


PLAINTIFF'S
EXHIBIT

motions.") However, the Court chose in this case to proceed with its analysis of the merits notwithstanding her failure. Thus, this Court does not need to address Ms. Leavy's argument that she should have been held to a different standard because all of Ms. Leavy's claims were analyzed on the merits.

### C. The District Court Correctly Granted Summary Judgment and Dismissed Ms. Leavy's ADA Discrimination Claim.

The District Court correctly dismissed Ms. Leavy's ADA claim. Ms. Leavy asserts that District Court's Order is erroneous because the District Court: (1) did not consider her cancer a disability; (2) applied an erroneous heightened standard for a reduction in force case; and (3) failed to consider her failure to accommodate claim. These arguments are unpersuasive.

#### 1. The District Court determined that Ms. Leavy was disabled.

Contrary to Ms. Leavy's arguments on appeal, the District Court determined that her cancer, which was in remission at the time of her position elimination, qualified as a disability under the ADA. *See* Order at PageID 650 (determining that Ms. Leavy satisfied the first four elements of her *prima facie* case including that she is disabled, otherwise qualified for the position and that FedEx knew of her disability.) FedEx concedes for purposes of this appeal that Ms. Leavy was disabled under the ADA.

#### 2. Ms. Leavy's claim fails under either standard applied.

Ms. Leavy argues that the District Court applied the wrong standard when

12

# EXHIBIT 9

**FedEx Statement of Facts (SOF)**

This exhibit contains the portions of FedEx's Statement of Facts submitted with its motion for

summary judgment, where FedEx acknowledges that Plaintiff was actively undergoing breast

cancer treatment, attending medical appointments, and was in remission during the relevant

period. FedEx's own SOF confirms that it had full knowledge of Plaintiff's medical condition

and her protected medical appointment on **October 4, 2018**.

**Importantly, this exhibit establishes that Plaintiff was terminated on the *same day* she**

**attended a protected medical appointment on October 4, 2018.** FedEx's awareness of her

appointment and immediate termination upon returning to work strongly supports the inference

of retaliation.

The exhibit further shows:

1. FedEx had actual knowledge of Plaintiff's serious health condition and medical treatment schedule;
2. Plaintiff's October 4, 2018 appointment was protected under the ADA and FMLA;
3. The timing of the termination - within hours of a protected medical appointment - is undisputed and highly probative;
4. FedEx's later claims that Plaintiff did not request accommodation or did not provide sufficient medical documentation conflict with its own Statement of Facts.

This exhibit supports Plaintiff's Rule 11 motion by demonstrating that FedEx's shifting

explanations and denials are contradicted by its own sworn submissions.

29.     After completing her radiation therapy, Leavy attended a follow-up appointment on June 1, 2018 and her medical records from that appointment show under the "Assessment and Plan" section that there was "no evidence of recurrence [of her cancer] at [that] time. (Hutton Decl. ¶¶ ___, Ex. 2 at bates label Leavy West Records 0223-0224).

30.     Leavy attended another follow-up appointment on October 4, 2018, and her medical records from that appointment show under the "Assessment" section that there was "no evidence of disease." (Hutton Decl. ¶¶ ___, Ex. 2 at bates label Leavy West Records 0240-0242).

**Leavy's Job Duties**

31.     During Leavy's employment as Galambos' Executive Administrative Assistant, Galambos had to become more involved in managing her own meetings, work schedule and daily office tasks because of several mistakes made by Leavy.  (Galambos Decl. ¶ 6).

32.     Leavy incorrectly scheduled a large meeting with corporate level participants for one hour instead of two hours despite being given written instructions via email, resulting in the meeting having to be rescheduled with the several different FedEx corporate respective offices. (Galambos Decl. ¶ 6, Ex. 1).

33.     Leavy put on Galambos' calendar a meeting with IT All Management for March 26, 2018, but the meeting was actually supposed to be scheduled for April 26, 2018. (Galambos Decl. ¶ 6, Ex. 2).

34.     Leavy was notified on April 20, 2018, two months before a June 22, 2018 meeting, that the June meeting had been canceled, yet she failed to let Galambos know, and Galambos, who had already begun preparing for the meeting, did not discover the meeting had been canceled until she communicated with her superior on June 18, 2018   (Galambos Decl. ¶ 6, Ex. 3).

35.     Galambos discovered that Leavy, rather than ask someone to cover her phone her, would answer business phone calls while in the restroom, which Galambos coached her on not to do going forward but was met with pushback and no desire to find an alternative solution. (Galambos Decl. ¶ 6).

▸ Insert shipping document here

This envelope is only for FedEx Express® shipments.

You can help us get your package safely to its destination by packing your items securely. Need help? Go to fedex.com/packaging for packing tips.



ORIGIN ID:ARGA  (901) 495-3561
BRENDA K. LEAVY

5036 OVERVIEW RIDGE CV

MEMPHIS, TN 38141
UNITED STATES US

SHIP DATE: 02DEC25
ACTWGT: 0.50 LB
CAD: 262973303/INET4535

BILL SENDER

TO  **CLERK'S OFFICE**
**UNITED STATES DISTRICT COURT**
**167 NORTH MAIN STREET**
**ODELL HORTON FEDERAL BUILDING**
**MEMPHIS TN 38103**
(901) 495-1200        REF:
INV:
PO:                    DEPT:

FedEx
Express

E



FedEx                              FRI - 05 DEC 5:00P

TRK# 8866 6156 2409         EXPRESS SAVER
0201

**SP NQAA**                        38103
                           TN-US  MEM



567-6000

UNITED STATES DISTRICT COURT
167 MAIN STON
ODELL HORTON FEDERAL
MEMPHIS TN

FedEx®

4535 RRDB EXP 10/26